John J. CHAPMAN, Plaintiff,

v.

**LORILLARD TOBACCO COMPANY,**
Defendant.

Civil No. 1:03CV00586.

United States District Court, M.D. North Carolina.

Oct. 20, 2004.

McLendon Humphrey & Leonard, Greensboro, NC, for Defendant.

## MEMORANDUM OPINION

BULLOCK, District Judge.

Plaintiff, a research chemist, brought this action against his employer on June 23, 2003, asserting claims of hostile work environment, retaliation, and race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981, and age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). Although Plaintiff alleges that Defendant subjected him to a racially hostile work environment and retaliated against him for pursuing his claim, his primary contention is that Defendant failed to select him for promotion during a reorganization of his department. Defendant has moved for summary judgment on all of Plaintiff's claims. For the reasons set forth below, the court will grant in part and deny in part Defendant's motion for summary judgment.

## FACTS

### I. *Plaintiff's Employment History*

John J. Chapman ("Plaintiff") is a black male who was born on August 18, 1947. Plaintiff graduated from North Carolina Agricultural and Technical State University in 1967 with a degree in chemistry. Plaintiff received a master's in chemistry from North Carolina Central University in 1977. Plaintiff received a Ph.D. from Wake Forest University in 2000.

Plaintiff began his employment with Lorillard Tobacco Company ("Defendant") in 1980. Plaintiff started as an analytical chemist in Defendant's Research and Development (R & D) Department. In 1984 Defendant promoted Plaintiff to the position of Research Chemist. In 1991 Defen-

Angela Newell Gray, Gray Newell Johnson & Blackmon, LLP, Winston–Salem, NC, for Plaintiff.

Natalie Kay Sanders, Nicole A. Crawford, M. Daniel McGinn, Brooks Pierce

dant promoted Plaintiff to the position of Senior Research Chemist.

Defendant employed Dr. Stacie Summers as a Research Chemist. In September 2001 Plaintiff made a comment regarding Dr. Summer's bust that offended Dr. Summers.[1] Dr. Summers reported the incident to her supervisor, Dr. Larry Gains. Dr. Summers then met with the manager of Research Administration, Ms. Linda Martin, to discuss the incident. Dr. Summers filed a formal complaint of sexual harassment, requested an investigation, and submitted a typewritten statement. Ms. Martin investigated the incident and, in doing so, interviewed Plaintiff. Plaintiff denied any inappropriate conduct but acknowledged that he had commented on Dr. Summers' bust. Gertrude Um'Rani, a female technician, revealed during the course of the investigation that Plaintiff had subjected her to sexual harassment also, although she never filed any formal charges. The result of the investigation of the incident was that Ms. Martin, Dr. Jack Reid, and Dr. Larry Gains met with Plaintiff and issued a written reprimand.[2] Plaintiff signed the reprimand and it became a part of Plaintiff's employment file.

## II. Defendant's Promotional Ladder for Technical Positions

Employees working in several of Defendant's departments may receive promotions in their respective technical ladders. Technical ladder promotions generally apply to Defendant's employees having science-based, engineering-based, or other specialized technical jobs. As an employee advances up the technical ladder, the employee receives increasing responsibilities over the work performed. Promotions of employees in Defendant's R & D Department are made pursuant to a technical ladder. An R & D employee may advance a level on the technical ladder if she or he meets certain minimum requirements regarding experience, education, and competency. The employee must also be performing at the next level on the technical ladder before being considered qualified for promotion, and the employee's supervisor, the Director of the department, and the Senior Vice–President of R & D must all agree on the employee's performance level before the employee may be promoted. Plaintiff's prior promotions on the technical ladder were made pursuant to these criteria.

In September 2002 Plaintiff requested that Dr. Gains consider him for a technical ladder promotion. The next position in the technical hierarchy above Plaintiff's Senior Research Chemist position was the position of Associate Scientist. An important requirement for promotion to the Associate Scientist position is outside recognition as an expert in one's field. Dr. Gains denied Plaintiff's promotion request based on his assessment that Plaintiff did not meet the prerequisites for the promotion.[3] Dr. Gains found that Plaintiff was not performing at the Associate Scien-

1. Dr. Summers alleged that Plaintiff commented on her "bust size," while Plaintiff contends that the comment regarded Dr. Summers' "bust line." (Def.'s Br. Supp. Mot. Summ. J. at 3) (citing Summers Decl. at 4; and Martin Decl. at 9).

2. Ms. Martin, Dr. Reid, and Dr. Gains all participated in the alleged discriminatory selection process for the second tier management positions.

3. Employees seeking a promotion to the position of Scientist must also meet the prerequisites of performance at the desired level and recognition as an expert in one's field. The court's analysis regarding Defendant's failure to promote Plaintiff to the position of Associate Scientist applies with equal force to Defendant's failure to promote Plaintiff to the position of Scientist.

tist level and that Plaintiff was not recognized as an expert in his field by outsiders. The Director and the Senior Vice President agreed with Dr. Gains' assessment regarding Plaintiff's failure to meet the minimum qualifications for the promotion. No other Senior Research Chemist, including three Caucasians with comparable years of experience and comparable or better performance ratings, were promoted in the relevant time period.

### III. Defendant's Managerial Promotions During Reorganization

Defendant hired Dr. William True in May 2002 to lead the R & D Department. Defendant charged Dr. True with the responsibility of restructuring R & D for the purposes of increasing the likelihood that marketable tobacco products would result from R & D research, maximizing the output of current projects and activities, and preparing Defendant for potential government regulation. Dr. True developed a new managerial structure for the R & D Department.

The first part of Dr. True's plan included an increased number of managers who reported directly to him ("first tier managers"). Prior to Dr. True's reorganization there were only four first tier managers. Dr. True increased the number of first tier managers to eight. Dr. True retained the four first tier managers who already held the position and promoted four other people to fill the remaining positions. Dr. True alone selected the persons to fill the four newly created positions. He based his decisions on his observations of and interactions with Defendant's employees and on his new vision for the R & D Department. Dr. True did not advertise or post the vacancies and no written job descriptions were developed. Plaintiff challenges three of Dr. True's staffing decisions regarding the four new positions.

Dr. True selected Dr. Gains to fill the position of Manager, External Relations. According to Dr. True, he chose Dr. Gains in large part because of his many years of management experience and extensive network of external contacts throughout the tobacco industry.[4]

Dr. True selected Mr. Edward Chodyniecki to staff the position of Manager, Laboratory Quality Systems. Dr. True chose Mr. Chodyniecki in large part because of his prior work experience developing a quality system that complied with government regulations and because of his work with Defendant's efforts at evaluating quality systems. Dr. True felt that Mr. Chodyniecki's prior experience could help the company's transition into potential government regulation.

Dr. True selected Mr. David Grider to staff the position of Director, Applied Research. Dr. True chose Mr. Grider in large part because of his wide-ranging knowledge of, and in-depth experience with, Defendant's manufacturing processes and personnel in Danville, Virginia, and Greensboro, North Carolina.

The second part of Dr. True's reorganization plan involved the staffing of second tier management positions. Dr. True collaborated with his newly selected first tier management team to fill the open positions in the second tier of management. According to Dr. True, he encouraged the group to consider every R & D employee as a potential candidate for the available second tier management positions.

In conjunction with the second tier management selection process, Dr. True held a meeting with the high level technical staff of the R & D Department. The purpose

4. Dr. True and other managers filed declarations in support of Defendant's motion for summary judgment in which they set out the reasons for their promotional decisions.

of the meeting was to receive the scientists' input on the new research direction of the R & D Department and to observe the scientists in a setting in which they had the opportunity to "be creative and to stand out as someone who could take charge of a small group." (True Decl. at 14.) Dr. True observed Plaintiff leading a breakout group in which Plaintiff was charged with facilitating his group's brainstorming session. Dr. True observed that Plaintiff "did not proactively manage or lead the discussion or pull the group together around any new ideas. Rather, he merely took notes on the comments made by his group members." (*Id.*) Dr. True concluded from his observation of the session that Plaintiff "did not demonstrate leadership skills." (*Id.*)

The first tier manager to whom the second tier manager would directly report then initially selected the person he or she felt was best qualified for the position. Plaintiff's name was not mentioned in the discussion of suitable candidates. However, Dr. True and three of the first tier managers were aware of the disciplinary action taken against Plaintiff for the sexual harassment of Dr. Summers. Plaintiff challenges the staffing decisions regarding four second tier management positions: Manager, Smoke Sciences; Manager, Process Technology; Manager, Chemistry; and R & D Program Manager.[5]

Mr. Grider selected Mr. Ron Ervin to fill the second tier management position of Manager, Smoke Science Laboratory. According to Mr. Grider, he selected Mr. Ervin because Mr. Ervin had previous experience in a contract laboratory implementing stringent laboratory operational standards. Mr. Ervin also demonstrated personnel management skills in numerous internal project situations and had shown budgetary knowledge. Mr. Ervin had extensive knowledge of Defendant's Smoking Laboratory and Leaf Laboratory.[6] Plaintiff, in contrast, never worked in either the Smoking or Leaf Laboratory and had no prior experience with laboratory operational standards.

Additionally, Mr. Grider selected Mr. Gerald Long to fill the second tier management position of Manager, Process Technology. Mr. Grider selected Mr. Long because Mr. Long's experience working for Defendant provided him with "contact with the following: (1) the processing of tobaccos in preparation for cigarette making; (2) the cigarette making and packaging processes; (3) initial tobacco processing and storage in preparation for aging, including fumigation; (4) the cigarette reclaim processes; (5) research and product development instrumentation, programs/projects/processes and facilities, both in applied and research capacities; and (6) Operations and Research and Development management from the Vice President Level downward." (Grider Decl. at 8–9.) Mr. Grider cited Mr. Long's relationships with management and operational personnel in Greensboro and Danville, networking capabilities and history with other tobacco companies, and overall performance rating with Defendant as bases for making Mr. Long the best candidate for the position. In contrast, Mr. Grider states that no other employee of Defendant had such extensive relevant experience, including Plaintiff.

5. Defendant does not actually categorize the R & D Program Managers as second tier management positions because they manage technical projects rather than personnel. For the purposes of this matter, however, the court will consider Plaintiff's R & D Program Manager challenge as part of the second tier management challenges.

6. Defendant consolidated the Smoking and Leaf Laboratories into one section, renamed the "Smoke Science Laboratory."

Dr. Reid selected Dr. Ed Robinson to fill the second tier management position of Manager, Chemistry. Dr. Reid based his decision on Dr. Robinson's demonstrated communication skills which would be vital to the position of Manager, Chemistry, and his scientific expertise. Dr. Robinson maintained excellent working relationships with other sections and departments within the company. Dr. Robinson's prior work experience, demonstrated skills and abilities, and the positive feedback that the group gave him during their discussions about filling the positions also influenced Dr. Reid's decision. According to Dr. Reid, he did not observe the attributes of a good manager in Plaintiff. Dr. Reid states that his decision was also influenced by his knowledge of the prior disciplinary action taken against Plaintiff for sexual harassment.

Dr. Stevens, the Director of R & D Programs, selected Dr. Teresa Neal, Ms. Suzanne Roof, and Dr. Michael Zawadzki to fill positions as R & D Program Managers. Mr. Stevens cited several reasons for each candidate's appointment, including the appointee's management, leadership, technical, and communication skills. In contrast, Mr. Stevens had no knowledge of Plaintiff managing a major project with deadlines or communicating with outside vendors.

Once the second tier management positions were tentatively staffed, the group again reviewed all women and minority candidates in the R & D Department to make sure that all the decisions were made on a non-discriminatory basis.[7] (Martin Decl. at 15.) The group concluded that it had chosen the best qualified people for each position. Upon approving the candidates selected for the second tier management positions, Dr. True informed the employees who had been selected to fill the positions and then made a formal presentation to all R & D employees announcing the changes.

## DISCUSSION

Summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party bears the burden of persuasion on the relevant issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party may survive a motion for summary judgment by producing "evidence from which a [fact finder] might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir.2004) (finding that the non-moving party "must have developed some evidence on which a juror could reasonably base a finding that discrimination motivated the challenged employment action"). When the motion is supported by affidavits, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R.Civ.P. 56(e); *see also Cray Communications, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 393–94 (4th Cir.1994) (moving party on summary judgment motion can simply argue the absence of evidence by which the non-movant can prove her case). In considering the evidence, all reasonable inferences are to be drawn in favor of the non-moving party, but "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the

---

7. Plaintiff stresses that the group did not review any resumes of minority or female employees at this or any other stage of the process. Defendant's leadership team, however, looked at no resumes throughout the entire selection process.

plaintiff." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Further, "[t]he non-moving party ... cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985).

## I. *Plaintiff Failed to Meet his Burden Regarding his Hostile Work Environment Claim*

■ "To survive summary judgment ... on [a] claim[ ] of a racially hostile work environment, [the non-moving party] must demonstrate that a reasonable jury could find [the moving party's] harassment (1) unwelcome; (2) based on race [or age]; and (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 183–84 (4th Cir.2001) (citing *Causey v. Balog,* 162 F.3d 795, 801 (4th Cir.1998)). Plaintiff concedes that his evidence of a hostile work environment "may not rise to the level sufficient to withstand summary judgment." (Pl.'s Mem. Opp'n Summ. J. at 16, n. 5.) The court agrees with Plaintiff's assessment. Plaintiff has all but abandoned his claim except for a few passing references to it. Plaintiff has failed to make a *prima facie* showing of a hostile work environment based on Plaintiff's race or age. "[Plaintiff's] conclusory statements, without specific evidentiary support, cannot support an actionable claim for harassment." *Causey,* 162 F.3d at 801–02. Accordingly, the court will grant Defendant's motion for summary judgment regarding Plaintiff's hostile work environment claim.

## II. *Plaintiff Failed to Meet his Burden Regarding his Retaliation Claim*

■ To establish a *prima facie* case of retaliation, Plaintiff must show that (1) he engaged in a protected activity, (2) his employer subjected him to an adverse employment action, and (3) there was a causal link between the activity and the adverse action. *Causey,* 162 F.3d at 803; *Beall v. Abbott Labs.,* 130 F.3d 614, 619 (4th Cir. 1997). Plaintiff has failed to present evidence establishing a *prima facie* case of retaliation. Plaintiff has not shown that he participated in a protected activity. Likewise, Plaintiff has not shown that Defendant subjected him to an adverse employment action based upon any protected activity. Plaintiff essentially conceded this failure at oral argument on Defendant's motion for summary judgment. Accordingly, the court will grant summary judgment on Plaintiff's retaliation claim.

## III. *Plaintiff Failed to Establish a Prima Facie Case Regarding Defendant's Denial of Plaintiff's Technical Ladder Promotion*

■ To establish a *prima facie* case for a claim alleging the failure to promote, a plaintiff must establish four elements: (1) that plaintiff is a member of a protected group; (2) that plaintiff's job performance was satisfactory and/or plaintiff was qualified for the promotion; (3) plaintiff was not promoted despite plaintiff's job performance and/or qualifications; and (4) similarly situated employees outside the protected group were treated more favorably. *Grey v. Potter,* 2003 WL 1923733 at *10 (M.D.N.C.2003) (citing *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 455 (4th Cir.1989)).

Subjective criteria may be used in assessing an employee's eligibility for promotion. "[T]he use of subjective criteria is relevant to a claim of racial discrimination, [but] standing alone it does not prove a violation of either Title VII or Section 1981." *Mallory v. Booth Refrigeration Supply Co., Inc.,* 882 F.2d 908, 910 (4th Cir.1989). However, when employee evaluations are to any degree subjective, the

legitimacy of the employer's alleged non-discriminatory reasons are subject to particularly close scrutiny. *See Page v. Bolger*, 645 F.2d 227, 230 (4th Cir.1981).

■ Plaintiff has failed to establish a *prima facie* case regarding Defendant's failure to promote him to the position of Associate Scientist. First, Plaintiff has not established that he was qualified for promotion. Defendant had clear, though somewhat subjective, prerequisites for the position of Associate Scientist. The subjective nature of the criteria alone does not render the criteria invalid. Plaintiff contests the judgment reached in applying the criteria and alleges discrimination in reaching the judgment. Nowhere does Plaintiff demonstrate, however, that he was performing at the level of Associate Scientist. Further, Plaintiff's attempt to demonstrate recognition as an expert in his field is insufficient. Plaintiff offers evidence that he published more materials than two other employees who were also not promoted to the position of Associate Scientist. Plaintiff's evidence does not establish his recognition as an expert in his field; it simply demonstrates that he has published more than two of the employees who were, likewise, not promoted. Plaintiff offers only speculation about the role of race in Defendant's promotion decision. Consequently, Plaintiff's proffered evidence is not sufficient to establish the second and third elements of a *prima facie* case.

■ Additionally, Plaintiff failed to show that similarly situated employees outside the protected group were treated more favorably. No one has been promoted to the position of Associate Scientist in years; Defendant did not promote similarly situated or even better situated employees outside the protected group to the position. (Reid Decl. at 8, 12–16.) Accordingly, Defendant's motion for summary judgment will be granted on this claim.

IV. *Plaintiff Failed to Meet his Burden in Response to Defendant's Proffered Legitimate, Non–Discriminatory Reasons for its Failure to Promote Plaintiff to a First Tier Management Position*

Plaintiff's claims of discrimination are subject to the burden-shifting scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny, since Plaintiff presents no direct evidence of discrimination.[8] Under *McDonnell Douglas,* once the aggrieved employee establishes a *prima facie* case,[9] "the burden of production shifts to the employer 'to articulate some legitimate, non-discriminatory reason' " for its action. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817); *see also Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir.1997) (citing *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994)). If the employer meets its burden of producing a legitimate, non-discriminatory reason for the adverse employment action, the employee must at least forecast sufficient evidence showing that the em-

---

8. Although Plaintiff references age discrimination in his pleadings, Plaintiff has failed to present evidence sufficient to state a claim of age discrimination. Notably, Plaintiff has failed to establish the ages of most of the employees who were selected for the contested positions. To the extent that Plaintiff states a *prima facie* case of age discrimina-

tion, the court's analysis of Plaintiff's response to Defendant's legitimate, non-discriminatory reasons also applies.

9. Defendant concedes for purposes of its motion that Plaintiff has established a *prima facie* case.

ployer's proffered reason is false to survive summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 149, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Price v. Thompson,* 380 F.3d 209, 214 (4th Cir.2004). The Fourth Circuit has explained that the *Reeves* formulation operates based on "the strength of the *prima facie* evidence in creating an inference of discrimination, and, 'the general principle of evidence law that the fact finder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt.'" *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 648 (4th Cir.2002) (quoting *Reeves,* 530 U.S. at 147, 120 S.Ct. 2097); *Price,* 380 F.3d at 214. "A *prima facie* case coupled with probative evidence 'that the employer's explanation is false,' *Reeves,* 530 U.S. at 149, 120 S.Ct. 2097, would counsel against granting the employer summary judgment ...." *Id.* (quoting *Reeves,* 530 U.S. at 147, 120 S.Ct. 2097). In analyzing the employer's proffered reason, "'it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it was truly the reason for the plaintiff's [non-promotion].'" *De-Jarnette v. Corning, Inc.,* 133 F.3d 293, 299 (4th Cir.1998) (quoting *Giannopoulos v. Brach & Brock Confections, Inc.,* 109 F.3d 406, 411 (7th Cir.1997)).

▮ Defendant has proffered legitimate, non-discriminatory reasons for not promoting Plaintiff to a first-tier management position. First, Defendant maintains that it sought employees exhibiting the characteristics of a good manager. Defendant stresses that the credentials that make a good manager are not necessarily the same credentials that make a good scientist. Defendant's employees charged with making the employment decisions cite numerous attributes of the selected employees that influenced their decisions to place them in the specific positions. Communication skills, leadership skills, interperson-

al skills, budgetary skills, previous work experience and prior managerial opportunities are among the reasons cited for the decisions made.

Second, Defendant cites the disciplinary action taken against Plaintiff for sexual harassment as a reason for Plaintiff's failure to be selected for a management position. Dr. True was aware of Plaintiff's harassment reprimand when selecting the personnel to fill the first tier management positions. Dr. True stated that the incident influenced his decision because "[t]he managerial positions required, among other things, good leadership skills, good judgment, and the ability to interact well with peers and subordinates. The conduct that resulted in Dr. Chapman's reprimand demonstrated a lack of these qualities." (True Decl. at 16.) Dr. True also stated that one of his "major concerns about the incident was that Chapman did not understand the severity of such a complaint and he never fully understood why such comments were so inappropriate." *Id.* Four of the nine people participating in the selection process for the second tier management positions—Ms. Martin, Dr. Reid, Dr. Gains, and Dr. True—had direct knowledge of Plaintiff's sexual harassment history. All state that Plaintiff's reprimand for sexual harassment impacted their decision regarding Plaintiff's fitness to be a manager of personnel. (*See* Martin Decl. at 17 ("The incident was one of several factors in my not putting his name forth as a potential candidate for a management position. I considered a reprimand for sexual harassment indicative of someone who did not have good leadership skills or good judgment and who did not interact well with peers or subordinates."); Reid Decl. at 20 (stating that sexual harassment complaint and reprimand "was another indication ... that [Plaintiff] was not the best qualified person"); Gains Decl. at 23 ("I was aware of the sexual harassment complaint and reprimand ...

and I would have considered that a reason not to choose Dr. Chapman had his name been put forth by any other member of the leadership team.").)

Plaintiff has not met his burden in showing that Defendant's stated reasons for failing to promote him were not the genuine reasons for his non-promotion as far as the first tier management positions are concerned. Plaintiff has not put forth a strong *prima facie* case, even though it is conceded by Defendant for purposes of its motion, nor has Plaintiff cast serious doubt on the Defendant's proffered justification for its decision. Plaintiff alleges that the subjective nature of the process rendered it discriminatory. As discussed above, an employer may rely upon subjective criteria in making employment decisions. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 258, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (finding that the defendant need not "prove by objective evidence that the person hired or promoted was more qualified than the plaintiff."). Plaintiff has offered no evidence to demonstrate that the subjective process was used as a vehicle for discrimination.[10] Although the attributes Defendant sought in filling the first tier managerial positions were not stated in definite terms, Plaintiff has also failed to show that he possessed the managerial characteristics sought by Defendant. Further, Plaintiff admits that he has no idea about the qualifications of several of the employees chosen for promotions. (Pl.'s Dep. at 61–62, 110–11.) To demonstrate his qualifications for a promotion to a management position, Plaintiff offers only his own opinion testimony and that of a non-supervisory co-worker, Gertrude Um'Rani. "[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate non-discriminatory reasons for an adverse employment action." *Williams v. Cerberonics, Inc.*, 871 F.2d at 456. A plaintiff's "unsubstantiated allegations and bald assertions concerning her own qualifications and the shortcomings of her co-workers failed to disprove [the defendant's] explanation or show discrimination." *Evans v. Techs. App. & Serv, Co.*, 80 F.3d 954, 960 (4th Cir.1996). *See also Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir.1988) (plaintiff's own opinions and conclusory allegations do not have sufficient "probative force to reflect a genuine issue of material fact").

Plaintiff's documented sexual harassment was a notable factor in Defendant's failing to promote Plaintiff to a first tier management position. Defendant had an understandable concern regarding promoting an employee to a management position who Defendant did not believe understood the gravity of sexual harassment. Plaintiff's response to Defendant's assertion that Plaintiff's sexual harassment record played a role in the promotion process is to speculate that it actually was not considered in the promotion process. Plaintiff also attempts to undermine the credibility of the underlying claim of sexual harassment. However, Plaintiff has failed to meet his burden in demonstrating that Defendant's proffered reason regarding Plaintiff's sexual harassment reprimand was false and was a pretext for discrimination.

V. *A Question of Fact Exists as to Defendant's Proffered Explanation for its Failure to Promote Plaintiff to any of Five Second Tier Management Positions*

 Selections for five of the second tier management positions were made by

---

**10.** As discussed below, Plaintiff failed to develop his disparate treatment theory to withstand summary judgment.

two first tier managers with no knowledge of the prior disciplinary action taken against the Plaintiff for sexual harassment. Both Mr. Grider and Dr. Stevens filed declarations in which they cited relative qualifications as the reason for their selections to the second tier management positions of Manager, Smoke Science Laboratory, and Manager, Process Technology, and for the three R & D project managers. Neither had knowledge of the disciplinary action against Plaintiff. The weakness in post-hoc rationales is the absence of initial job descriptions or even aspirational qualifications, which provide an employer with an opportunity to emphasize the characteristics in which the person selected was superior. *See Dennis,* 290 F.3d at 646–47. This may not be the case here, but the record is unclear. It is also unclear from Mr. Grider's and Dr. Stevens' sworn declarations how familiar they were with Plaintiff's work history and qualifications since apparently no resumes or personnel records were reviewed by them.

A plaintiff's own assertions of his qualifications are ordinarily not enough to counter *substantial* evidence of legitimate, nondiscriminatory reasons for an adverse employment action, as noted above, but at this stage of the proceedings Plaintiff is not required to show superior qualifications. Certainly Defendant has presented evidence of an alternative to discrimination as the basis for its decision, but Defendant's evidentiary showing cannot be characterized as abundant and uncontroverted. *See Dennis,* 290 F.3d at 650. A comparison of the parties' resumes and work histories could change this analysis, but that evidence is not before the court. Whether or not the evidence offered at trial will ultimately present an issue of fact can be considered under Rule 50, Federal Rules of Civil Procedure, after the development of a more complete record. The court will therefore deny Defendant's motion for summary judgment on the Plaintiff's claim

of racial discrimination in failing to promote him to one of the second tier management positions set out above.

## VI. *Plaintiff Failed to Meet his Burden in Showing Disparate Impact*

■■■■ Disparate impact occurs when facially neutral employment practices " 'fall more harshly on one group than another and cannot be justified by business necessity.' " *Raytheon Co. v. Hernandez,* 540 U.S. 44, 54, 124 S.Ct. 513, 519, 157 L.Ed.2d 357 (2003) (internal citations omitted). The plaintiff bears the burden of showing (1) that there is an under-representation of qualified members of a protected class promoted to the position at issue and (2) that the specific elements of the employer's criteria had a significant impact on the protected class. *See McNairn v. Sullivan,* 929 F.2d 974, 979 (4th Cir.1991). The mere absence of minority employees in upper level positions does not demonstrate discrimination without a comparison to the relevant labor pool. *See Carter v. Ball,* 33 F.3d 450, 457 n. 9 (4th Cir.1994) (stating that "[w]ithout evidence of how many African–Americans were qualified for positions at the level to which [plaintiff] sought to be promoted, there can be no reliable proof of underrepresentation").

■■■■ Although Plaintiff has shown a lack of minorities in some of Defendant's management positions, he has not shown an under-representation of qualified members of a protected class. Plaintiff fails to establish how many minority employees were in the applicant pool and how many were qualified to be promoted to any of the contested positions. Plaintiff opines that Caucasians advance up Defendant's corporate ladder quickly whereas similarly situated minorities do not and discusses several examples of Caucasian employees who have advanced more rapidly than mi-

nority employees. Plaintiff offers no evidence other than speculation and opinion, however, that the advancements were not warranted or that the minority employees were similarly qualified but failed to advance. Further, instead of substantiating his claims with employment records or some form of statistical support, Plaintiff relies on the beliefs of two non-supervisory co-workers to sustain his proposition that minorities are excluded from management participation. Plaintiff has therefore failed to establish the first component of a *prima facie* case.

Plaintiff also failed to meet his burden regarding the specific elements of Defendant's promotion criteria that had a significant impact on the protected class. Plaintiff simply alleges that the process was discriminatory. The subjective nature of the Defendant's promotion process is not, as discussed above, *per se* discriminatory. Plaintiff's conclusory statements do not suffice to establish the second component of a *prima facie* case of disparate impact as well. Conjecture and opinion alone cannot support a *prima facie* case of disparate impact.

### CONCLUSION

When an employer makes promotions from among current employees without providing written job descriptions and posting the vacancies, and when the evaluators themselves are not members of a plaintiff's protected group, it is incumbent upon the court to scrutinize carefully the employer's proffered reasons for its selections. However, it is equally clear that when the employer comes forward not only with relative qualifications, but other independent and uncontroverted evidence as reasons for its decisions, a plaintiff must do more than offer his own opinion as to his own qualifications to create an issue of fact as to the veracity of the employer's explanation. For a court to sanction less would permit a favorable verdict for a

plaintiff to be based on nothing more than speculation and conjecture. Such is the situation before the court as to the first tier promotions. Plaintiff has not put forward a strong *prima facie* case, nor has he cast serious doubt on Defendant's proffered explanations for its actions. A rational fact finder must be able to do more than to speculate that a plaintiff may, but may not, have been the victim of intentional discrimination. Therefore, the court will grant Defendant's motion for summary judgment on Plaintiff's first tier promotion claims. However, Defendant does not have the advantage of the Plaintiff's documented disciplinary reprimand for sexual harassment as an additional reason for failure to promote Plaintiff to one of five second tier positions. Consequently, as noted above, resolution of Plaintiff's second tier promotion claims regarding the positions Manager, Smoke Science Laboratory; Manager, Process Technology; and R & D Program Managers must await development of a more complete record. Defendant's motion for summary judgment will be denied as to these positions.

Summary judgment will be granted on Plaintiff's other claims for age discrimination, hostile work environment, retaliation, technical ladder promotions, and disparate impact.

Remaining for trial will be Plaintiff's claims for racial discrimination in promotions to the five second tier positions set out above.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

### ORDER

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Defendant's motion for summary judgment [Doc. # 21] is **GRANTED IN PART AND DENIED IN PART**. Defendant's motion for summary judgment is granted as to Plaintiff's first tier promotion claims. Defendant's motion for summary judgment is denied as to Plaintiff's second tier promotion claims regarding the positions Manager, Smoke Science Laboratory; Manager, Process Technology; and R & D Program Managers. Defendant's motion for summary judgment is granted as to Plaintiff's claims for age discrimination, hostile work environment, retaliation, technical ladder promotions, and disparate impact.