Claudia DWYER, Plaintiff,

v.

**ETHAN ALLEN RETAIL, INC., Defendant.**

**No. 07–80495–CIV.**

United States District Court, S.D. Florida.

Dec. 11, 2007.

Keith Michael Stern, Shavitz Law Group, Boca Raton, FL, for Plaintiff.

Richard David Tuschman, Epstein Becker & Green, Miami, FL, for Defendant.

### ORDER DENYING DEFENDANT'S MOTION TO STRIKE AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DANIEL T.K. HURLEY, District Judge.

**THIS CAUSE** is before the court upon defendant's motion to strike the declara-

tion of the plaintiff [DE # 40] and defendant's motion for summary judgment [DE # 25]. For the reasons given below, the court will deny defendant's motion to strike and grant defendant's motion for summary judgment.

## BACKGROUND

This is an action under the Americans with Disabilities Act and the Florida Civil Rights Act.

Plaintiff Claudia Dwyer was born without a left hand. From 1991 to 2006, plaintiff worked as a design consultant for defendant Ethan Allen Retail, Inc. and for affiliated businesses. Plaintiff was terminated by defendant on June 30, 2006. In December 2006, plaintiff filed a charge with the Equal Employment Opportunity Commission and Florida Commission for Human Relations, alleging that she had been subjected to illegal disability discrimination. On March 30, 2007, the EEOC dismissed Dwyer's charge and notified her of her right to sue.

On June 8, 2007, plaintiff filed a complaint in this court [DE # 1], alleging violations of the Americans with Disabilities Act and the Florida Civil Rights Act. On October 1, 2007, defendant filed the instant motion for summary judgment [DE # 25]. On October 29, 2007, defendant filed the instant motion to strike the declaration of the plaintiff [DE # 40].

## JURISDICTION

This court has subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1331 since the plaintiff raises a claim under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* This court has supplemental jurisdiction over plaintiffs state-law claim pursuant to 28 U.S.C. § 1367(a).

Venue is appropriate in this court pursuant to 28 U.S.C. § 1391(a)(2) because the events giving rise to this action occurred within the Southern District of Florida.

## DISCUSSION

### A. Standard of Review

Summary judgment is warranted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of meeting this exacting standard. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In determining whether summary judgment is appropriate, the facts and inferences from the record are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The non-moving party, however, bears the burden of coming forward with evidence of each essential element of his claims, such that a reasonable jury could return a verdict in his favor. *See Bailey v. Allgas, Inc.,* 284 F.3d 1237, 1243 (11th Cir.2002). In response to a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

The existence of a mere scintilla of evidence in support of the non-movant's position is insufficient; there must be evidence on the basis of which a jury could reasonably find for the non-movant. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A complete failure of proof concerning an essential element of the non-movant's case necessarily renders all other facts immaterial and entitles the moving party to summary judgment. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Gonzalez v. Lee County Housing Authority,* 161 F.3d 1290, 1294 (11th Cir.1998).

## B. Defendant's Motions

### I. Motion to Strike Declaration of Plaintiff

Defendant deposed plaintiff on August 22, 2007, and plaintiff's deposition [DE # 34–2] was filed with the court on October 19, 2007. Plaintiff then attached to her opposition to defendant's motion for summary judgment her unsworn declaration. Defendant argues that because several statements in plaintiff's declaration arguably contradict her deposition testimony, the declaration must be stricken. For example, in plaintiff's deposition she testified that her congenital birth defect does not affect her other extremities or organs. *See* Dwyer Dep. at 40–41. But in her declaration, plaintiff stated that as a result of having only one hand, plaintiff has had to rely excessively on that hand, causing her numerous medical problems. *See* Dwyer Decl. at ¶ 9. In her deposition, plaintiff testified that there were no jobs which she was unable to do as a result of her birth defect. *See* Dwyer Dep. at 41. But plaintiff stated in her declaration that she was "unable to perform semi-skilled jobs requiring manual dexterity." *See* Dwyer Decl. at ¶ 24.

Defendant relies on *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234 (11th Cir.2003) to support the proposition that a contradictory declaration must be stricken. In *McCormick,* the court noted that "[u]nder the law of this Circuit, we may disregard an affidavit submitted solely for the purpose of opposing a motion for summary

judgment when that affidavit is directly contradicted by deposition testimony." 333 F.3d at 1240 n. 7. The court went on to note that because the affiant who had submitted the contradictory statement had given an explanation for the contradictions that did not appear to be a "complete sham," the court agreed to "accept and credit [the] affidavit submitted on summary judgment." *Id.*

The *McCormick* court was not deciding a motion to formally strike the contradictory statement, but deciding whether the contradictory statement created a genuine issue of material fact that would have precluded summary judgment. This court is therefore persuaded that to "disregard" an affidavit as a complete sham, as referenced in *McCormick,* means to grant summary judgment for a party notwithstanding the existence of the sham affidavit; not to actually strike the sham affidavit and refuse to consider it at all. This view is supported by the case cited in *McCormick,* in which the Eleventh Circuit noted that an "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.,* 736 F.2d 656, 657 (11th Cir. 1984). In other words, summary judgment may be granted despite the submission of a sham affidavit. But there is no indication in either *McCormick* or *Van T. Junkins* that such a statement—even assuming plaintiff's declaration in this case is one—should be stricken.

In deciding this motion for summary judgment, this court must of course view the evidence in the light most favorable to the non-movant, and cannot grant summary judgment if a genuine issue of mate-

rial fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). But the court must indeed examine the record evidence, and the existence of a mere scintilla of evidence is insufficient to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Therefore, the court has taken into account the contradictions between plaintiff's declaration and deposition in determining whether a genuine issue of material fact exists in this case. However, without determining whether plaintiff's declaration is a "complete sham," the court concludes that formally striking plaintiffs declaration is inappropriate. Therefore, the court will deny defendant's motion to strike.

### 2. Motion for Summary Judgment

■ To establish a prima facie case of disability discrimination under the Americans with Disabilities Act, plaintiff must show that: 1) she has a disability; 2) she is a "qualified" individual; and 3) defendant discriminated against her because of her disability. *Greenberg v. BellSouth Telecommunications, Inc.,* 498 F.3d 1258, 1263 (11th Cir.2007); *Ellis v. England,* 432 F.3d 1321, 1326 (11th Cir.2005).[1]

Defendant makes two arguments in its motion for summary judgment. First, defendant argues that plaintiff is not disabled within the meaning of the Americans with Disabilities Act. Second, defendant argues that even if disabled, plaintiff's disability was not a factor in her termination.

#### a. Plaintiff's condition

An individual is "disabled" under the ADA if she has a physical or mental impairment that substantially limits one or

more of her major life activities; has a record of such impairment; or is regarded as having such an impairment. 42 U.S.C. § 12102(2). Federal regulations defines "physical or mental impairment" as including "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal...." *See* 29 C.F.R. § 1630.2(h). Federal regulations further define "substantially limits" as meaning that the person is either unable to perform a major life activity, or "significantly restricted" as to the condition, manner or duration under which an individual can perform a major life activity. *See* 29 C.F.R. § 1630.2(j)(1). In determining whether an individual is substantially limited in a major life activity, the following factors should generally be considered: (1) the nature and severity of the impairment; (2) the duration of the impairment; and (3) the permanent or long-term impact of the impairment. *See* 29 C.F.R. § 1630.2(j)(2). Finally, federal regulations describe "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *See* 29 C.F.R. § 1630.2(i). The Eleventh Circuit frequently looks to those regulations to determine whether a plaintiff has a physical impairment that substantially limits a major life activity. *Mullins v. Crowell,* 228 F.3d 1305, 1314 (11th Cir.2000); *Hilburn v. Murata Electronics North America, Inc.,* 181 F.3d 1220, 1226 (11th Cir.1999).

■ At the outset, plaintiff argues that because defendant admitted in its answer that plaintiff is a "qualified individual with a disability," plaintiff's disabled status

---

1. Disability-discrimination claims under the Florida Civil Rights Act are analyzed under the same framework as ADA claims. *D'Angelo v. ConAgra Foods, Inc.,* 422 F.3d 1220, 1224 n. 2(11th Cir.2005). Plaintiff's claims must therefore stand or fall together, and the court's analysis of plaintiff's ADA claim applies equally to her FCRA claim.

must be considered as having been conclusively established. Defendant moved to amend its answer to change this admission to a denial [DE # 16]. The court denied that motion [DE # 30] on the ground that to the extent defendant sought to change conclusions of law, any amendment would be futile because a party cannot bind the court by admitting to a legal conclusion; and to the extent defendant sought to change factual admissions, defendant's amendment would unduly prejudice plaintiff. The court notes that although whether a claimed affliction constitutes an impairment under the ADA and whether an identified endeavor constitutes a major life activity are determinations of law for the court, *see MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1275 (10th Cir. 2005), whether plaintiff is substantially limited in a major life activity is a question of fact for a jury, *see Williams v. Philadelphia Housing Authority Police Dept.*, 380 F.3d 751, 763 (3d Cir.2004). In any event, whether defendant's admission has any effect is a moot point because the court decides below that, regardless of what the defendant can admit or has admitted, a reasonable factfinder could conclude that plaintiff is a qualified individual with a disability.

■ Plaintiff's condition—a congenital birth defect leaving her a left arm with no hand—is unquestionably a "physical impairment." The remaining question is whether plaintiff is substantially limited in a major life activity. One major life activity is "performing manual tasks." 29 C.F.R. § 1630.2(i). In her deposition, plaintiff testified that she has no difficulty feeding or dressing herself, caring for herself in terms of personal hygiene, and doing household chores. *See* Dwyer Dep. at 35–36, 37, 40. Plaintiff further testified that there are no jobs she is unable to do as a result of her disability, and that she does not consider her defect to be a disability. *See id.* at 41, 44–45.

But plaintiff also testified that she lacks the finger dexterity of the average person. *See id.* at 42–43. In response to a question asking whether she had any difficulty performing manual tasks, plaintiff responded "obviously I can't pick something up with my left hand." *See id.* at 40. In the declaration attached to her opposition to defendant's motion for summary judgment, plaintiff stated that she often "experience[s] difficulty with normal manual tasks requiring dexterity" and that "the weight, size and shape of an object all limit my capabilities to lift objects due to the impairments to my gripping ability and manual dexterity." *See* Dwyer Decl. at ¶ 14, 17. The court fully acknowledges that the statements in the declaration are self-serving and somewhat contradictory, and regards them with due caution. Nevertheless, when combined with other statements in her deposition—and the plain, uncontested fact that plaintiff is missing a hand—a reasonable juror could conclude that plaintiff is substantially limited in performing manual tasks.

Working is likewise considered a major life activity under EEOC regulations. *See* 29 C.F.R. § 1630.2(i). To be substantially limited in working, a plaintiff must be unable to work in a broad class of jobs. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). The set of jobs requiring use of a computer may be considered a class of jobs. Plaintiff has indicated that using a computer with one hand, although possible, is laborious, slow, and fatiguing to her right hand. *See* Dwyer Decl. at ¶ 22, 27. Moreover, these statements do not directly contradict statements in plaintiff's testimony. Similarly, plaintiff stated in her declaration that she cannot perform jobs that consistently require handwriting documents. *See id.* at ¶ 22. A reasonable juror could conclude from this and other evidence that plaintiff is substantially lim-

ited in her ability to perform clerical or administrative jobs.

Therefore, the court declines to grant defendant's motion for summary judgment on the ground that plaintiff is not a qualified individual with a disability under the ADA.

### b. Plaintiff's termination

Defendant next argues that its motion for summary judgment must be granted because there is no genuine issue of material fact as to whether plaintiff was fired because of her disability.

There is a threshold dispute about the appropriate framework in which to analyze this case. Plaintiff argues that the court should take heed of *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). In *Costa*, the Supreme Court held that direct evidence of discrimination is not required in Title VII mixed-motive cases, i.e. cases in which both legitimate and illegitimate reasons motivated an adverse employment decision. *Id.* at 92–93, 123 S.Ct. 2148. This case is not a Title VII case. In a footnote, plaintiff suggests that nonetheless "[*Costa's*] principles are fully applicable to disability/handicap discrimination claims brought pursuant to the ADA and FCRA."

It is somewhat unclear what plaintiff means to argue by emphasizing *Costa*. Plaintiff herself acknowledges that *Costa* does not change the traditional *McDonnell–Douglas* framework for analyzing ADA claims. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003) (applying *McDonnell–Douglas* to an ADA claim post-*Costa*); *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir.2004). And the court does not understand the defendant to deny that circumstantial evidence of discrimination is relevant in applying the *McDonnell–Douglas* framework. So *Costa* is essentially irrelevant to this case.

■ Under *McDonnell–Douglas,* as it applies to the ADA context, plaintiff must first establish a *prima facie* case of disability discrimination by showing that she was disabled, otherwise qualified to perform the job, and discriminated against based upon the disability. The burden then shifts to defendant to articulate a legitimate, non-discriminatory reason for plaintiff's termination. If defendant is able to do so, the burden then returns to plaintiff, who must show that defendant's reason is unworthy of credence and a mere pretext for discrimination. *See Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir.2004).

In late 2005, David Burton became plaintiff's immediate supervisor. Plaintiff testified that Burton was uneasy and uncomfortable around plaintiff because of plaintiff's disability. *See* Dwyer Dep. at 47. For example, plaintiff testified that Burton appeared "horrified" to see plaintiff tying bow ties around a slip cover on a chair. *Id.* at 49. When plaintiff approached Burton for assistance in using her computer, he was very reluctant to do so because he did not like to be around her. *Id.* at 52–53. Plaintiff also testified about one particular incident in which a client came into the store and asked for plaintiff while plaintiff was on vacation. According to plaintiff's testimony, Burton never told plaintiff about the client when plaintiff returned from vacation. Instead, Burton assisted the client himself without telling plaintiff because Burton did not want to work together with plaintiff to help plaintiffs clients. Plaintiff testified that this is unusual for employees in Burton's position, who generally work together with designers such as plaintiff. *Id.* at 54–57.

A reasonable juror could conclude from the evidence that Burton harbored a discriminatory animus against plaintiff. However, the facts show that Burton did

not make the decision to terminate plaintiff. While in a customer's home, Burton discovered that plaintiff had ordered cushions for a sofa and loveseat for the customer through an outside workroom, rather than through Ethan Allen. *See* Burton Dep. at 70. Plaintiff apparently wrote the invoice for the cushions on an Ethan Allen invoice and collected payment on behalf of the outside workroom. Burton believed that plaintiff's actions constituted violations of defendant's conflict-of-interest policy, which generally prohibits employees from facilitating orders for non-Ethan Allen products from Ethan Allen customers.

Burton contacted Lisa Greenberg, Ethan Allen's district manager for Florida, about Cindy Hadfield, a customer who had third-party cushions on a sofa and loveseat purchased from Ethan Allen. Burton suspected that plaintiff had violated defendant's conflict-of-interest policy. Over the course of several phone calls, Greenberg and Burton discussed the potential problem with plaintiff. *See* Greenberg Dep. at 28–54. Greenberg and Burton met with plaintiff on June 28, 2006 to discuss the incident. *Id.* at 67–76. At the meeting, plaintiff admitted placing an order on behalf of an Ethan Allen customer with an outside shop, writing up the third-party bill on an Ethan Allen invoice and collecting payment on behalf of the outside business. *Id.* at 71–74. At the end of the day on June 28, 2006, Greenberg notified plaintiff that plaintiff had been suspended without pay. *See* Bonnell Dep. at 57. Finally, Greenberg contacted Christine Bonnell, Ethan Allen's human resources field manager. *See* Greenberg Dep. at 88. Together, Greenberg and Bonnell agreed that plaintiff's employment would be terminated, and plaintiff was terminated on June 30, 2006. *See* Bonnell Dep. at 68.

██ Under the "cat's paw" theory of discrimination, a *prima facie* case of discrimination may be established even where the person harboring the discriminatory views is not the decisionmaker, if the person with the impermissible animus somehow manipulates the decisionmaker into making the adverse employment decision. *See Wright v. Southland Corp.,* 187 F.3d 1287, 1304 n. 20 (11th Cir.1999). Where the person with discriminatory intent makes a recommendation or provides false information to the decisionmaker, and that recommendation or information forms the basis of the decision, the harasser is effectively the decisionmaker, and the titular decisionmaker is a mere conduit for the harasser's discriminatory bias. *See Llampallas v. Mini–Circuits, Inc.,* 163 F.3d 1236, 1249 (11th Cir.1998). On the other hand, where a decisionmaker conducts her own evaluation and makes an independent decision, her decision is free of the taint of a biased subordinate employee. *Pennington v. City of Huntsville,* 261 F.3d 1262, 1270 (11th Cir.2001).

In this case, plaintiff has provided sufficient evidence that Burton harbored a discriminatory animus against her, and that Burton, by reporting plaintiff to Greenberg, caused plaintiff to be terminated. Thus, sufficient evidence has been presented to demonstrate a *prima facie* case of discrimination under a "cat's paw" theory.

██ The burden thus shifts to defendant to articulate a legitimate, non-discriminatory reason for firing plaintiff. This burden is one of production, not persuasion, and involves no credibility determination. *Vessels v. Atlanta Independent School System,* 408 F.3d 763, 769 (11th Cir.2005). The court finds that defendant, by producing evidence tending to show that plaintiff was fired for violating defendant's conflict-of-interest policy, has met this "exceedingly light" burden. *Perryman v. Johnson Products Co., Inc.,* 698 F.2d 1138, 1141 (11th Cir.1983).

Thus, the burden finally shifts back to plaintiff to produce sufficient evidence that

defendant's proffered legitimate reason was, in reality, a mere pretext for discrimination. The court finds that plaintiff has not produced sufficient evidence that the real reason plaintiff was fired was Burton's discriminatory animus.

The record evidence overwhelmingly shows that the decision of Greenberg and Bonnell to terminate plaintiff was not a product of, or influenced by, any discriminatory animus Burton might have had. Burton, Greenberg, and Bonnell all stated that Burton had no input or influence in the decision to terminate plaintiff. *See* Burton Decl. ¶ 14; Bonnell Decl. ¶ 17, Greenberg Decl. ¶ 25. Although Burton was present at the June 28 meeting, the substantive discussion at the meeting was led by Greenberg. *See* Burton Dep. at 114. Greenberg conducted her own investigation into the matter. *See* Greenberg Decl. ¶ 26 (stating that Greenberg independently reviewed the relevant documentation and questioned plaintiff). Plaintiff suggests that Greenberg's investigation was inadequate. But because plaintiff had admitted to facilitating the order with the third-party workroom, there was no dispute about what happened, obviating the need for an extensive factual investigation.

Plaintiff suggests that there is other evidence suggesting Burton tainted Greenberg's purportedly independent decision. Plaintiff argues that she has submitted evidence showing that Burton did not tell his superiors everything he knew about the situation, but only selectively communicated certain facts. For example, Burton did not tell Greenberg that the outside cushions had been ordered and made years earlier, and Greenberg testified that she acted on the understanding that the cushion cores had been ordered within the past three to six months. *See* Greenberg Dep. at 47. But these are relatively trivial details that do not substantially undermine the notion that Greenberg came to an in-dependent conclusion that plaintiff had violated company policy, and an independent decision (together with Bonnell) that plaintiff should be fired.

As the court noted above, plaintiff has provided sufficient evidence of that animus, and sufficient *prima facie* evidence that Burton, who allegedly harbored the prejudice, contributed to the termination of plaintiff's employment. But that is not the same as saying that plaintiff's violation of defendant's conflict-of-interest rules was a mere pretext for her termination. As plaintiff herself points out, the Eleventh Circuit has referred to a "pretext" as a "purpose or motive alleged . . . in order to cloak one's real intention." *See Cordoba v. Dillard's, Inc.,* 419 F.3d 1169, 1184 (11th Cir.2005). If Greenberg's and Bonnell's real motive for terminating plaintiff was plaintiff's violation of the conflict-of-interest policy, then there is no pretext. Burton may have been happy that plaintiff was terminated, or even hoped that plaintiff was fired. The defendant's conflict-of-interest policy may even have been unwise or excessively harsh. But the court does not sit as a super-personnel department to second-guess the business decisions of an employer. *EEOC v. Total System Services,* 221 F.3d 1171, 1176 (11th Cir.2000).

Plaintiff further argues that she did not actually violate company policy as written and received by plaintiff. For example, Greenberg suggested in her testimony that referrals to outside providers are not necessarily improper for products that Ethan Allen does not sell, *see* Greenberg Dep. at 43, and plaintiff testified that Ethan Allen did not offer the cushions that the customer was looking for. *See* Dwyer Dep. at 246. The argument is essentially that defendant misapplied its own policy. In the first place, it is at least doubtful that there is a conceptually tenable distinction between a company's policy as perceived by the company, and the "real" policy. But

even assuming there is, to say that defendant may have misunderstood its own policy is not to say that defendant's reason for terminating plaintiffs employment was a mere pretext for impermissible discrimination.

Moreover, defendant produced corroborating evidence of its understanding of its own policy. Just a few months after plaintiff was terminated, and before plaintiff filed her charge with the EEOC, a non-disabled employee was terminated for a similar violation of company policy. *See* Greenberg Decl. ¶ 18–20. This is evidence that defendant takes its conflict-of-interest rules seriously. Moreover, the discrepancies between Greenberg's and Burton's deposition testimony do not give rise to a reasonable inference of pretext, because the contradictions concern minor details, such as whether the customer was confused or not about whether she could seek a refund from Ethan Allen for the cushions bought from the outside workroom, rather than essential facts going to the heart of the matter. Accordingly, plaintiff has not sufficiently demonstrated that defendant's proffered reason for plaintiff's termination was pretextual. Therefore, the court will grant defendant's motion for summary judgment.

### CONCLUSION

For these reasons, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendant Ethan Allen Retail, Inc.'s motion to strike [DE # 40] is **DENIED.**

2. Defendant Ethan Allen Retail, Inc.'s motion for summary judgment [DE # 25] is **GRANTED.**

3. Pursuant to Fed.R.Civ.P. 58, the court will enter final judgment by separate order.