# RAYTHEON CO. *v.* HERNANDEZ

No. 02–749.   Argued October 8, 2003—Decided December 2, 2003

THOMAS, J., delivered the opinion of the Court, in which all other Members joined, except SOUTER, J., who took no part in the decision of the case, and BREYER, J., who took no part in the consideration or decision of the case.

*Carter G. Phillips* argued the cause for petitioner. With him on the briefs were *Alan Charles Raul, Paul Grossman, Paul W. Cane, Jr., Neal D. Mollen, Jay B. Stephens,* and *Ronald Stolkin.*

*Deputy Solicitor General Clement* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Olson, Assistant Attorney General Boyd, John P. Elwood, David K. Flynn,* and *Sarah E. Harrington.*

*Stephen G. Montoya* argued the cause and filed a brief for respondent.*

JUSTICE THOMAS delivered the opinion of the Court.

The Americans with Disabilities Act of 1990 (ADA), 104 Stat. 327, as amended, 42 U. S. C. § 12101 *et seq.*, makes it unlawful for an employer, with respect to hiring, to "discriminate against a qualified individual with a disability because of the disability of such individual." § 12112(a). We are asked to decide in this case whether the ADA confers preferential rehire rights on disabled employees lawfully terminated for violating workplace conduct rules. The United States Court of Appeals for the Ninth Circuit held that an employer's unwritten policy not to rehire employees who left the company for violating personal conduct rules contravenes the ADA, at least as applied to employees who were lawfully forced to resign for illegal drug use but have since been rehabilitated. Because the Ninth Circuit improperly applied a disparate-impact analysis in a disparate-treatment case in order to reach this holding, we vacate its judgment and remand the case for further proceedings consistent with this opinion. We do not, however, reach the question on which we granted certiorari. 537 U. S. 1187 (2003).

I

Respondent, Joel Hernandez, worked for Hughes Missile Systems for 25 years.[1] On July 11, 1991, respondent's ap-

---

*Ann Elizabeth Reesman, Stephen A. Bokat, Robin S. Conrad,* and *Ellen D. Bryant* filed a brief for the Equal Employment Advisory Council et al. as *amici curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the Betty Ford Center et al. by *David T. Goldberg* and *Daniel N. Abrahamson;* and for the National Employment Lawyers Association et al. by *Claudia Center, Brian East, Terisa E. Chaw,* and *Arlene Mayerson.*

[1] Hughes has since been acquired by petitioner, Raytheon Company. For the sake of clarity, we refer to Hughes and Raytheon collectively as petitioner or the company.

pearance and behavior at work suggested that he might be under the influence of drugs or alcohol. Pursuant to company policy, respondent took a drug test, which came back positive for cocaine. Respondent subsequently admitted that he had been up late drinking beer and using cocaine the night before the test. Because respondent's behavior violated petitioner's workplace conduct rules, respondent was forced to resign. Respondent's "Employee Separation Summary" indicated as the reason for separation: "discharge for personal conduct (quit in lieu of discharge)." App. 12a.

More than two years later, on January 24, 1994, respondent applied to be rehired by petitioner. Respondent stated on his application that he had previously been employed by petitioner. He also attached two reference letters to the application, one from his pastor, stating that respondent was a "faithful and active member" of the church, and the other from an Alcoholics Anonymous counselor, stating that respondent attends Alcoholics Anonymous meetings regularly and is in recovery. Id., at 13a–15a.

Joanne Bockmiller, an employee in the company's Labor Relations Department, reviewed respondent's application. Bockmiller testified in her deposition that since respondent's application disclosed his prior employment with the company, she pulled his personnel file and reviewed his employee separation summary. She then rejected respondent's application. Bockmiller insisted that the company had a policy against rehiring employees who were terminated for workplace misconduct. Id., at 62a. Thus, when she reviewed the employment separation summary and found that respondent had been discharged for violating workplace conduct rules, she rejected respondent's application. She testified, in particular, that she did not know that respondent was a former drug addict when she made the employment decision and did not see anything that would constitute a "record of" addiction. Id., at 63a–64a.

Respondent subsequently filed a charge with the Equal Employment Opportunity Commission (EEOC). Respondent's charge of discrimination indicated that petitioner did not give him a reason for his nonselection, but that respondent believed he had been discriminated against in violation of the ADA.

Petitioner responded to the charge by submitting a letter to the EEOC, in which George M. Medina, Sr., Manager of Diversity Development, wrote:

> "The ADA specifically exempts from protection individuals currently engaging in the illegal use of drugs when the covered entity acts on the basis of that use. Contrary to Complainant's unfounded allegation, his nonselection for rehire is not based on any legitimate disability. Rather, Complainant's application was rejected based on his demonstrated drug use while previously employed and the complete lack of evidence indicating successful drug rehabilitation.

> "The Company maintains it's [sic] right to deny reemployment to employees terminated for violation of Company rules and regulations. . . . Complainant has provided no evidence to alter the Company's position that Complainant's conduct while employed by [petitioner] makes him ineligible for rehire." Id., at 19a–20a.

This response, together with evidence that the letters submitted with respondent's employment application may have alerted Bockmiller to the reason for respondent's prior termination, led the EEOC to conclude that petitioner may have "rejected [respondent's] application based on his record of past alcohol and drug use." Id., at 94a (EEOC Determination Letter, Nov. 20, 1997). The EEOC thus found that there was "reasonable cause to believe that [respondent] was denied hire to the position of Product Test Specialist because of his disability." Id., at 95a. The EEOC issued a right-to-

sue letter, and respondent subsequently filed this action alleging a violation of the ADA.

Respondent proceeded through discovery on the theory that the company rejected his application because of his record of drug addiction and/or because he was regarded as being a drug addict. See 42 U. S. C. §§ 12102(2)(B)–(C).[2] In response to petitioner's motion for summary judgment, respondent for the first time argued in the alternative that if the company really did apply a neutral no-rehire policy in his case, petitioner still violated the ADA because such a policy has a disparate impact. The District Court granted petitioner's motion for summary judgment with respect to respondent's disparate-treatment claim. However, the District Court refused to consider respondent's disparate-impact claim because respondent had failed to plead or raise the theory in a timely manner.

The Court of Appeals agreed with the District Court that respondent had failed timely to raise his disparate-impact claim. *Hernandez* v. *Hughes Missile Systems Co.*, 298 F. 3d 1030, 1037, n. 20 (CA9 2002). In addressing respondent's disparate-treatment claim, the Court of Appeals proceeded under the familiar burden-shifting approach first adopted by this Court in *McDonnell Douglas Corp.* v. *Green*, 411 U. S. 792 (1973).[3] First, the Ninth Circuit found that with respect

---

[2] *The ADA defines the term "disability" as:*

"(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

"(B) a record of such an impairment; or

"(C) being regarded as having such an impairment." 42 U. S. C. § 12102(2).

[3] The Court in *McDonnell Douglas* set forth a burden-shifting scheme for discriminatory-treatment cases. Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. 411 U. S., at 802. If the employer meets this burden, the presumption of intentional discrimination disappears, but the plaintiff can still prove disparate treatment by, for instance,

to respondent's prima facie case of discrimination, there were genuine issues of material fact regarding whether respondent was qualified for the position for which he sought to be rehired, and whether the reason for petitioner's refusal to rehire him was his past record of drug addiction.[4]   298 F. 3d, at 1034–1035.   The Court of Appeals thus held that with respect to respondent's prima facie case of discrimination, respondent had proffered sufficient evidence to preclude a grant of summary judgment.   *Id.,* at 1035.   Because petitioner does not challenge this aspect of the Ninth Circuit's decision, we do not address it here.

The Court of Appeals then moved to the next step of *McDonnell Douglas,* where the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for its employment action.   411 U. S., at 802.   Here, petitioner contends that Bockmiller applied the neutral policy against rehiring employees previously terminated for violating workplace conduct rules and that this neutral company policy constituted a legitimate and nondiscriminatory reason

---

offering evidence demonstrating that the employer's explanation is pretextual.   See *Reeves* v. *Sanderson Plumbing Products, Inc.,* 530 U. S. 133, 143 (2000).   The Courts of Appeals have consistently utilized this burden-shifting approach when reviewing motions for summary judgment in disparate-treatment cases.   See, *e. g., Pugh* v. *Attica,* 259 F. 3d 619, 626 (CA7 2001) (applying burden-shifting approach to an ADA disparate-treatment claim).

[4] The Court of Appeals noted that "it is possible that a drug *user* may not be 'disabled' under the ADA if his drug use does not rise to the level of an addiction which substantially limits one or more of his major life activities."   298 F. 3d, at 1033–1034, n. 9.   The parties do not dispute that respondent was "disabled" at the time he quit in lieu of discharge and thus a record of the disability exists.   We therefore need not decide in this case whether respondent's employment record constitutes a "record of addiction," which triggers the protections of the ADA.

The parties are also not disputing in this Court whether respondent was qualified for the position for which he applied.

for its decision not to rehire respondent. The Court of Appeals, although admitting that petitioner's no-rehire rule was lawful on its face, held the policy to be unlawful "as applied to former drug addicts whose only work-related offense was testing positive because of their addiction." 298 F. 3d, at 1036. The Court of Appeals concluded that petitioner's application of a neutral no-rehire policy was not a legitimate, nondiscriminatory reason for rejecting respondent's application:

> "Maintaining a blanket policy against rehire of *all* former employees who violated company policy not only screens out persons with a record of addiction who have been successfully rehabilitated, but may well result, as [petitioner] contends it did here, in the staff member who makes the employment decision remaining unaware of the 'disability' and thus of the fact that she is committing an unlawful act. . . . Additionally, we hold that a policy that serves to bar the reemployment of a drug addict despite his successful rehabilitation violates the ADA." *Id.*, at 1036–1037.

In other words, while ostensibly evaluating whether petitioner had proffered a legitimate, nondiscriminatory reason for failing to rehire respondent sufficient to rebut respondent's prima facie showing of disparate treatment, the Court of Appeals held that a neutral no-rehire policy could never suffice in a case where the employee was terminated for illegal drug use, because such a policy has a disparate impact on recovering drug addicts. In so holding, the Court of Appeals erred by conflating the analytical framework for disparate-impact and disparate-treatment claims. Had the Court of Appeals correctly applied the disparate-treatment framework, it would have been obliged to conclude that a neutral no-rehire policy is, by definition, a legitimate, non-

discriminatory reason under the ADA.[5]   And thus the only remaining question would be whether respondent could produce sufficient evidence from which a jury could conclude that "petitioner's stated reason for respondent's rejection was in fact pretext." *McDonnell Douglas, supra,* at 804.

## II

This Court has consistently recognized a distinction between claims of discrimination based on disparate treatment and claims of discrimination based on disparate impact.   The Court has said that "'[d]isparate treatment' . . . is the most easily understood type of discrimination.   The employer simply treats some people less favorably than others because of their race, color, religion, sex, or [other protected characteristic]." *Teamsters* v. *United States,* 431 U. S. 324, 335, n. 15 (1977).   See also *Hazen Paper Co.* v. *Biggins,* 507 U. S. 604, 609 (1993) (discussing disparate-treatment claims in the context of the Age Discrimination in Employment Act of 1967).   Liability in a disparate-treatment case "depends on whether the protected trait . . . actually motivated the employer's decision." *Id.,* at 610.   By contrast, disparate-impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Teamsters, supra,* at 335–336, n. 15.   Under a disparate-impact theory of discrimination, "a facially neutral employment practice may be deemed [illegally discriminatory] without evidence of

---

[5] This would not, of course, resolve the dispute over whether petitioner did in fact apply such a policy in this case.   Indeed, the Court of Appeals expressed some confusion on this point, as the court first held that respondent "raise[d] a genuine issue of material fact as to whether he was denied re-employment because of his past record of drug addiction," *id.,* at 1034, but then later stated that there was "no question that [petitioner] applied this [no-rehire] policy in rejecting [respondent's] application," *id.,* at 1036, n. 17.

the employer's subjective intent to discriminate that is required in a 'disparate-treatment' case." *Wards Cove Packing Co.* v. *Atonio*, 490 U. S. 642, 645–646 (1989), superseded by statute on other grounds, Civil Rights Act of 1991, § 105, 105 Stat. 1074–1075, 42 U. S. C. § 2000e–2(k) (1994 ed.).

Both disparate-treatment and disparate-impact claims are cognizable under the ADA. See 42 U. S. C. § 12112(b) (defining "discriminate" to include "utilizing standards, criteria, or methods of administration . . . that have the effect of discrimination on the basis of disability" and "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability"). Because "the factual issues, and therefore the character of the evidence presented, differ when the plaintiff claims that a facially neutral employment policy has a discriminatory impact on protected classes," *Texas Dept. of Community Affairs* v. *Burdine*, 450 U. S. 248, 252, n. 5 (1981), courts must be careful to distinguish between these theories. Here, respondent did not timely pursue a disparate-impact claim. Rather, the District Court concluded, and the Court of Appeals agreed, that respondent's case was limited to a disparate-treatment theory, that the company refused to rehire respondent because it regarded respondent as being disabled and/or because of respondent's record of a disability. 298 F. 3d, at 1037, n. 20.

Petitioner's proffer of its neutral no-rehire policy plainly satisfied its obligation under *McDonnell Douglas* to provide a legitimate, nondiscriminatory reason for refusing to rehire respondent. Thus, the only relevant question before the Court of Appeals, after petitioner presented a neutral explanation for its decision not to rehire respondent, was whether there was sufficient evidence from which a jury could conclude that petitioner did make its employment decision based on respondent's status as disabled despite petitioner's proffered explanation. Instead, the Court of Appeals concluded that, as a matter of law, a neutral no-rehire policy was not

a legitimate, nondiscriminatory reason sufficient to defeat a prima facie case of discrimination.[6] The Court of Appeals did not even attempt, in the remainder of its opinion, to treat this claim as one involving only disparate treatment. Instead, the Court of Appeals observed that petitioner's policy "screens out persons with a record of addiction," and further noted that the company had not raised a business necessity defense, 298 F. 3d, at 1036–1037, and n. 19, factors that pertain to disparate-impact claims but not disparate-treatment claims. See, e. g., Grano v. Department of Development of Columbus, 637 F. 2d 1073, 1081 (CA6 1980) ("In a disparate impact situation . . . the issue is whether a neutral selection device . . . screens out disproportionate numbers of [the protected class]").[7] By improperly focusing on these factors, the Court of Appeals ignored the fact that petitioner's no-rehire policy is a quintessential legitimate, nondiscriminatory reason for refusing to rehire an employee who was

---

[6] The Court of Appeals characterized respondent's workplace misconduct as merely "testing positive because of [his] addiction." 298 F. 3d, at 1036. To the extent that the court suggested that, because respondent's workplace misconduct is related to his disability, petitioner's refusal to rehire respondent on account of that workplace misconduct violated the ADA, we point out that we have rejected a similar argument in the context of the Age Discrimination in Employment Act. See Hazen Paper Co. v. Biggins, 507 U. S. 604, 611 (1993).

[7] Indeed, despite the fact that the Nation's antidiscrimination laws are undoubtedly aimed at "the problem of inaccurate and stigmatizing stereotypes," ibid., the Court of Appeals held that the unfortunate result of petitioner's application of its neutral policy was that Bockmiller may have made the employment decision in this case "remaining unaware of [respondent's] 'disability.'" 298 F. 3d, at 1036. The Court of Appeals did not explain, however, how it could be said that Bockmiller was motivated to reject respondent's application because of his disability if Bockmiller was entirely unaware that such a disability existed. If Bockmiller were truly unaware that such a disability existed, it would be impossible for her hiring decision to have been based, even in part, on respondent's disability. And, if no part of the hiring decision turned on respondent's status as disabled, he cannot, ipso facto, have been subject to disparate treatment.

terminated for violating workplace conduct rules. If petitioner did indeed apply a neutral, generally applicable no-rehire policy in rejecting respondent's application, petitioner's decision not to rehire respondent can, in no way, be said to have been motivated by respondent's disability.

The Court of Appeals rejected petitioner's legitimate, non-discriminatory reason for refusing to rehire respondent because it "serves to bar the re-employment of a drug addict despite his successful rehabilitation." 298 F. 3d, at 1036–1037. We hold that such an analysis is inapplicable to a disparate-treatment claim. Once respondent had made a prima facie showing of discrimination, the next question for the Court of Appeals was whether petitioner offered a legitimate, nondiscriminatory reason for its actions so as to demonstrate that its actions were not motivated by respondent's disability. To the extent that the Court of Appeals strayed from this task by considering not only discriminatory intent but also discriminatory impact, we vacate its judgment and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE SOUTER took no part in the decision of this case. JUSTICE BREYER took no part in the consideration or decision of this case.