**Santiago LOPEZ, Plaintiff–Appellant,**

v.

**PACIFIC MARITIME ASSOCIATION, Defendant–Appellee,**

and

**International Longshore and Warehouse Union; and International Longshore and Warehouse Union Local 13, Defendants.**

No. 09–55698.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 1, 2010.

Filed March 2, 2011.

Andrea L. Cook, Andrea Cook & Associates, Long Beach, CA, for the plaintiff-appellant.

Jason M. Steele, Morgan, Lewis & Bockius LLP, Los Angeles, CA, for the defendant-appellee.

Before: HARRY PREGERSON, KENNETH F. RIPPLE,* and SUSAN P. GRABER, Circuit Judges.

Opinion by Judge GRABER; Partial Concurrence and Partial Dissent by Judge PREGERSON.

## OPINION

GRABER, Circuit Judge:

Plaintiff Santiago Lopez appeals from the entry of summary judgment in favor of Defendant Pacific Maritime Association on Plaintiff's claims for disparate treatment and disparate impact under the federal Americans with Disabilities Act of 1990 ("ADA") and the state Fair Employment and Housing Act ("FEHA"). On de novo review, *Doran v. 7–Eleven, Inc.*, 524 F.3d 1034, 1047 (9th Cir.2008), we affirm.

---

* The Honorable Kenneth F. Ripple, Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

1. Because this case comes to us after the entry of summary judgment for Defendant,

## I. *Background* [1]

Defendant represents the shipping lines, stevedore companies, and terminal operators that run the ports along the west coast of the United States. As the collective bargaining agent and payroll administrator of those employers, Defendant enforces the policies that govern the hiring of longshore workers who work along the west coast. One of those policies is a "one-strike rule," which eliminates from consideration any applicant who tests positive for drug or alcohol use during the pre-employment screening process. Defendant notifies its applicants at least seven days in advance of administering the drug test. Failing the drug test, even once, disqualifies an applicant permanently from future employment.

Plaintiff wants to be a longshoreman. He first applied in 1997 at the port in Long Beach, California. At that time, however, Plaintiff suffered from an addiction to drugs and alcohol. When Defendant administered its standard drug test, Plaintiff tested positive for marijuana. Defendant therefore disqualified Plaintiff from further consideration under the one-strike rule.

In late 2002, Plaintiff recognized the deleterious effects on his health that his addictions had caused. He became clean and sober and, in 2004, reapplied to be a longshoreman. Because of the one-strike rule, Defendant rejected Plaintiff's application. At that time, Defendant did not know of Plaintiff's earlier addiction. Plaintiff attempted to appeal, but Defendant never entertains appeals from disqualifications arising from positive drug tests.

---

we state the facts in the light most favorable to Plaintiff. *Dark v. Curry County,* 451 F.3d 1078, 1082 n. 2 (9th Cir.2006).

Plaintiff then filed this action, claiming that Defendant violated the ADA and the FEHA by discriminating against him on the basis of his protected status as a rehabilitated drug addict. *See* 42 U.S.C. §§ 12112(a), 12114(b)(1)(expressly protecting from employment discrimination any person who has "been rehabilitated successfully and is no longer engaging in [illegal drug use]"); Cal. Gov't Code § 12926(*l*) (incorporating by reference any protection in the ADA not expressly incorporated into the FEHA). The district court granted summary judgment to Defendant. Plaintiff timely appeals.

## II. *Plaintiff's Disparate Treatment Claim*

■ In support of his disparate treatment claim, Plaintiff makes three arguments. He first argues that the one-strike rule facially discriminates against recovering or recovered drug addicts. We disagree. The rule eliminates *all* candidates who test positive for drug use, whether they test positive because of a disabling drug addiction or because of an untimely decision to try drugs for the first time, recreationally, on the day before the drug test. Conversely, the rule allows a drug-addicted applicant who happens to be sober at the time of the drug test to complete pre-employment processing successfully. Here, for example, had Plaintiff applied for the *first* time in 2004, he would qualify for employment despite his status as a recovering addict. The triggering event for purposes of the one-strike rule is a failed drug test, not an applicant's drug addiction.

The Supreme Court's opinion in *Raytheon Co. v. Hernandez*, 540 U.S. 44, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003), supports our view of the one-strike rule. There, the Court held that an employer's policy not to rehire workers who lost their jobs due to drug-related misconduct constituted a "neutral," "legitimate, [and] nondiscrimina-

tory reason for refusing to rehire" the aggrieved employee. *Id.* at 53, 124 S.Ct. 513. The Court disapproved of the argument that, because the employee's misconduct related to his drug addiction, the employer's refusal to rehire him on account of that misconduct violated the ADA. *Id.* at 54 n. 6, 124 S.Ct. 513. The ADA prohibits employment decisions made because of a person's qualifying disability, not decisions made because of factors merely related to a person's disability. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993) (holding that an employer's decision "wholly motivated by factors other than age" does not constitute age discrimination, even if "the motivating factor is correlated with age").

Second, Plaintiff alleges that Defendant adopted the one-strike rule intentionally to exclude recovering and recovered drug addicts from its work force. The record belies that allegation. Before the adoption of the one-strike rule, the longshore industry suffered numerous serious accidents and injuries, including several fatalities. Defendant attributed those accidents in part to a culture that accepted the use of drugs and alcohol in the workplace. Defendant thought that it could reduce such accidents by eliminating applicants who might be more likely to use drugs or alcohol at work.

With the support of the union that represented the longshore workers, Defendant began administering drug tests to new applicants. Defendant decided to make the disqualification of applicants who tested positive permanent because it thought that applicants who could not abstain from using an illegal drug, even after receiving advance notice of an upcoming drug test, showed less responsibility and less interest in the job than applicants who passed the drug test. Thus, Defendant's

reasons for rejecting applicants who test positive did not include a calculation that an applicant might test positive because of a drug addiction, rather than because of recreational use.

In short, nothing about the history of the one-strike rule leads us to conclude that Defendant adopted the rule with a discriminatory purpose. The ADA and the FEHA protect people who are recovering or who have recovered from a drug addiction; they do not protect people who are using illegal drugs when they apply for a job. It was lawful for Defendant to eliminate applicants who were using drugs when they applied to be longshore workers. It was likewise lawful for Defendant to disqualify those applicants permanently. Nothing in the record suggests that Defendant targeted or attempted to target recovered drug addicts, as distinct from recreational users.

Finally, Plaintiff argues that the district court improperly granted summary judgment because Defendant learned of Plaintiff's drug addiction shortly after disqualifying him. We fail to see how Plaintiff's attempt to inform Defendant of his status *after* Defendant disqualified him has any bearing on whether Defendant decided to disqualify Plaintiff *because of* his protected status. *See Raytheon,* 540 U.S. at 54 n. 7, 124 S.Ct. 513 ("If [the employer] were truly unaware that ... a disability existed, it would be impossible for her hiring decision to have been based, even in part, on [the employee's] disability. And, if no part of the hiring decision turned on [the employee's] status as disabled, he cannot, *ipso facto,* have been subject to disparate treatment."); *Brundage v. Hahn,* 57 Cal. App.4th 228, 66 Cal.Rptr.2d 830, 836 (1997) (affirming summary judgment on an employee's ADA and FEHA disparate treatment claims because the employer could not have discriminated on the basis of a disability of which it did not know).

Plaintiff attempts to rely on our opinion in *Hernandez v. Hughes Missile Systems Co.,* 362 F.3d 564 (9th Cir.2004), to show that he has raised a genuine issue of material fact with respect to his disparate treatment claim. But the facts in *Hernandez* clearly distinguish it from the circumstances here. In *Hernandez,* an employer fired an employee for failing to pass his drug test. *Id.* at 566. The employee later became sober and reapplied. Unlike in this case, the employee included with his new application a letter from his Alcoholics Anonymous sponsor that informed the employer of the employee's "steady and consistent progress in his recovery from [his] disease." *Id.* That piece of evidence was crucial because, even though the employer claimed that it had not read the letter, a reasonable juror could have found that it did. *Id.* at 566–67. Consequently, we reversed summary judgment because "a reasonable jury could determine that [the employer] refused to rehire [the employee] because of his past record of addiction and not because of a company rule barring rehire of previously terminated employees." *Id.* at 570.

Plaintiff has no such evidence. His letter informing Defendant of his drug addiction came only *after* Defendant's decision to disqualify him from further processing. Accordingly, Plaintiff's disparate treatment claim fails because there is no evidence in this record that Defendant disqualified him because of his protected status.

## III. *Plaintiff's Disparate Impact Claim*

Plaintiff's disparate impact claim also fails. He argues that the one-strike rule disparately affects recovering drug addicts by eliminating anyone who previously tested positive for drug use. But he offers only the bald assertion that this result *must* be so. We disagree because,

as we have noted, the rule does not *necessarily* screen out recovering drug addicts disproportionately.

To create a genuine issue of fact, Plaintiff must have produced evidence from which a fact-finder reasonably could conclude that the one-strike rule results in fewer recovered drug addicts in Defendant's employ, as compared to the number of qualified recovered drug addicts in the relevant labor market. *See Hazelwood Sch. Dist. v. United States,* 433 U.S. 299, 308, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977) (comparing the racial composition of the employer's work force to the racial composition of the qualified work force in the relevant labor market). The record contains neither statistical nor anecdotal evidence to that effect.

Plaintiff did present to the district court an affidavit from a forensic economist. The economist concluded that Plaintiff had a viable disparate impact claim[2] because, after "[c]omparing the selection rate of the whole population [of longshore worker applicants] (48%) versus the population of the 'protected group' (0%)," she found it "evident that [the one-strike rule] is in violation of the 80% Rule." *See* 29 C.F.R. § 1607.4(D) (1984) ("A selection rate for any race, sex, or ethnic group which is less than [eighty percent] of the rate for the group with the highest rate will generally be regarded by the Federal enforcement agencies as evidence of adverse impact, while a greater than four-fifths rate will generally not be regarded by Federal enforcement agencies as evidence of adverse impact.").

Although the economist did not define the "protected group," she appears to have made the same mistake as Plaintiff. The correctly defined "protected group" for purposes of the ADA and the FEHA is recovered drug addicts. It does not matter whether such individuals applied to Defendant previously. If the number of recovered addicts in Defendant's workforce roughly reflects the number of recovered addicts in the relevant labor market, then Defendant has not broken the law under Plaintiff's theory. By defining the "protected group" as the number of recovered drug addicts *who previously applied to Defendant and were rejected because they failed a drug test,* Plaintiff and his expert assume their own conclusion. Although Defendant will never hire those people and thus their selection rate always will be zero, we still do not know how many recovered drug addicts Defendant hires versus how many recovered drug addicts it turns away, nor do we know how many of those turned away are not drug addicts, recovering or otherwise.

Plaintiff complains that our standard places an unfair burden on him because he has no way to know how many recovering or recovered drug addicts Defendant has disqualified. Neither can he determine the proportion of recovering or recovered drug addicts in the relevant labor market because, he argues, state law prevents him from inquiring into a person's history of drug abuse. We recognize the challenge involved in bringing a disparate impact claim of this kind, but both logic and precedent require him to produce *some* evidence that tends to show that the one-strike rule excludes recovering or recovered drug addicts disproportionately. Plaintiff introduced no such evidence. At the summary judgment stage, a party no longer can rely on allegations alone, however plausible they may be. *Berger v. City of Seattle,* 569 F.3d 1029, 1077–78 (9th

---

**2.** We assume, without deciding, that the economist's affidavit includes some admissible evidence, while noting that it contains a legal conclusion. *See Sullivan v. Dollar Tree Stores,* *Inc.,* 623 F.3d 770, 777 (9th Cir.2010) ("Pure legal conclusions are not admissible as factual findings.").

Cir.2009) (en banc). Because the record contains no evidence supporting an essential element of Plaintiff's disparate impact claim, we must affirm the summary judgment on that claim.

## IV. Conclusion

We recognize that the one-strike rule imposes a harsh penalty on applicants who test positive for drug use. As Defendant candidly concedes, many people question the rule's reasonableness in light of the fact that many people who use drugs later rehabilitate themselves, as Plaintiff exemplifies. But unreasonable rules do not necessarily violate the ADA or the FEHA. Because Plaintiff failed to establish that Defendant intentionally discriminated against him on the basis of his protected status or that the one-strike rule disparately affects recovered drug addicts, we affirm the summary judgment in favor of Defendant.

AFFIRMED.

PREGERSON, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority's conclusion that the district court did not err in granting summary judgment to Defendant on Lopez's disparate treatment claim. But, I disagree with the majority's decision to foreclose Lopez's disparate impact claim, and I would allow that claim to proceed for the following reasons:

Lopez contends that lifetime bans for drug test failures are per se violations of the ADA because they invariably exclude certain protected individuals from employment based on *past* behavior.[1] Employers may not reject an applicant because the applicant was previously addicted to drugs.

*See Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 568 (9th Cir.2004). Yet Lopez contends this is exactly what the Pacific Maritime Association's ("PMA") lifetime hiring ban does. To support his contention, Lopez offered expert testimony that drug addicts are disproportionately affected by the lifetime ban. In addition, he showed that at least twenty-seven individuals were subjected to the ban during roughly the same period he was. Because the identities of those individuals are protected, the court does not know which, if any, of them were drug addicts rather than casual users, or which of the addicts, if any, were later rehabilitated. It is clear, however, that a significant number of individuals were impacted by the ban. It is also reasonable to infer that at least some of those individuals, like Lopez, were at one time addicted to drugs, but after participating in a drug rehabilitation program, were able to overcome their addiction. Viewing the evidence in the light most favorable to the Plaintiff, and making all reasonable inferences in his favor, *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir.2001), Lopez has put forward sufficient evidence to establish a prima facie case of adverse impact on the protected class.

Moreover, the district court erred in requiring statistical evidence to support Lopez's disparate impact claim. While statistical evidence is generally required to show disparate impact under, for example, the Age Discrimination in Employment Act,[2] such evidence is not required for similar claims under the ADA:

It is not necessary to make statistical comparisons between a group of people with disabilities and people who are not

---

1. This is distinct from either current drug use or workplace misconduct, both of which employers may lawfully penalize. *See, e.g.,* Amy L. Hennen, *Protecting Addicts in the Employ-*

*ment Arena: Charting a Course Toward Tolerance,* 15 Law & Ineq. 157, 172–74 (1997).

2. *See Pottenger v. Potlatch Corp.*, 329 F.3d 740, 749 (9th Cir.2003).

disabled to show that a person with a disability is screened out by a selection standard. Disabilities vary so much that it is difficult, if not impossible, to make general determinations about the effect of various standards, criteria and procedures on "people with disabilities." Often, there may be little or no statistical data to measure the impact of a procedure on any "class" of people with a particular disability compared to people without disabilities.

Barbara T. Lindemann & Paul Grossman, *Employment Discrimination Law* 953 (C. Geoffrey Weirich ed., 4th ed.2007) (quoting EEOC, *Technical Assistance Manual* § 4.3 (1992)).

Furthermore, it is manifestly unreasonable to require statistical data regarding the number of recovering addicts either hired by an employer or screened out by the test. These figures are not kept by employers, and indeed such data likely could not be lawfully acquired. Moreover, recovering addicts are unlikely to identify themselves to employers, or to a plaintiff's investigator in a lawsuit such as this, even if asked. One of the primary limitations suffered by individuals recovering from addiction is the continuing stigma associated with their prior drug and alcohol use.[3] It is not an accident that nearly every 12–step support group includes the word "anonymous" in its name. Thus, statistical evidence on recovering addicts is not practically available. It follows that if we are to give effect to the statute's express protection of individuals recovering from drug and alcohol addictions, we must, at the summary judgment stage, liberally construe any evidence suggesting an adverse impact on those individuals.

I do not suggest that we now determine whether lifetime employment bars result-

ing from a positive drug test necessarily violate the ADA. It is clear, though, that where such a test is mandated by an employer who exercises singular control over an industry spanning the whole west coast of the United States, the potential impact of the policy is broad and pervasive. I would allow Lopez's case to proceed to determine whether PMA's lifetime hiring ban in fact has an adverse impact on recovering addicts. Accordingly, I dissent from the majority's agreement with the district court on the disparate impact claim.

---

**3.** *See* Brief of the Betty Ford Center, et al. as Amici Curiae Supporting Respondent, *Raytheon v. Hernandez*, 540 U.S. 44, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003) (No. 02–749), 2003 WL 21649671 at *21–22.