# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-60011

United States Court of Appeals
Fifth Circuit

**FILED**

March 21, 2016

Lyle W. Cayce
Clerk

YVONNE M. DEMARCE,

        Plaintiff - Appellant

v.

ROBINSON PROPERTY GROUP CORPORATION, doing business as
Horseshoe Casino,

        Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 2:12-CV-34

Before KING, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:*

    Yvonne Demarce appeals the district court's grant of summary judgment in favor of her former employer, Robinson Property Group Corporation ("Robinson") in her suit alleging that Robinson violated the Americans with Disabilities Act ("ADA") by both terminating her and denying her a reasonable

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-60011

accommodation.   After carefully reviewing the record and considering the parties' respective arguments on appeal, we affirm.

## I.

In July 2010, after years of working in the casino business, Demarce began working for Robinson as a card game dealer at the Horseshoe Casino ("Horseshoe) in Tunica, Mississippi.   Demarce was initially hired to deal blackjack and carnival games.

During the relevant time period, Horseshoe operated under a 10-point attendance policy under which employees accumulated points for arriving late, leaving early, or being absent.   Pursuant to the policy, employees who accumulated 10 points within a 12-month period were subject to termination. The attendance policy also contained a mechanism—the "early out" or "EO" list—that allowed employees to leave work early without accumulating points. The early out list operated as follows: employees could sign the list, which was maintained on a daily basis, and if a lack of business required management to send employees home early, then the employees who signed the list would be sent home from work in the order in which they appeared on the list.   Although employees sent home pursuant to the early out list did not accumulate points, an employee who "circumvented" the list—*i.e.*, an employee who requested to "move up" on the early out list despite not being next in line to be dismissed— would receive a half point if that employee worked more than half her shift, and a whole point if she worked less than half.

Over the course of her employment with Robinson, Demarce received warnings based on her poor attendance in 2001, 2002, 2003, 2004, 2005, 2006, 2007, and 2010.   Prior to the last written warning in 2010, Demarce had been on the verge of termination for violating Horseshoe's attendance policy on at least three occasions.

No. 14-60011

In 2008, Demarce notified management that she was having difficulty performing her job as a result of complications from osteoarthritis. Specifically, Demarce explained that her condition caused her pain and discomfort when she worked at a game that required her to stand. Demarce therefore asked Renee Suhr, who was in charge of assigning dealers to game tables, if she could be assigned to work only games with sit-down tables. In response, Suhr told Demarce that she would need to provide a doctor's note in order to be assigned exclusively to sit-down tables.

On October 16, 2009, Demarce provided human resources with a note from her healthcare provider, Dr. James Varner, stating that she should not be assigned to stand-up tables for a period of two weeks as a result of her arthritis. Lisa Kinard, who was Horseshoe's leave of absence administrator, requested additional information from Demarce's healthcare provider, but nevertheless assigned her to work only at sit-down tables while that request was pending.

Around this time, Demarce and her husband, who also worked at the casino, had the opportunity to bid on different shifts. Demarce and her husband bid on the "swing" shift, which allowed them to have "three days off and four days on." At the time, Horseshoe operated four sit-down games during Demarce's chosen shift: a blackjack derivative game called "21 plus 3," three card poker, and two mini baccarat tables. These games were located in Pit 4 of the casino. In light of her requested accommodation, Demarce was assigned to work the 21-plus-3 sit-down table.

On October 23, 2009, Dr. Varner provided Demarce with an additional letter, which explained, *inter alia*, that she should be restricted from "prolonged standing (8 hrs)" and should be assigned to "seated work only" for two to four weeks. Following receipt of this letter, Robinson continued to assign Demarce to sit-down games only. In November 2009, following expiration of

3

No. 14-60011

the previous letter's four-week standing restriction, Demarce provided Kinard with another letter from Dr. Varner, which restricted her from "prolonged standing (8hrs)," required seated work only, and provided an indefinite duration for the restriction on standing. Kinard viewed the letter's mandate of "seated work only" as inconsistent with its restriction on prolonged standing for eight hours, and therefore requested clarity from Dr. Varner. On January 22, 2010, Demarce obtained a revised note from Dr. Varner, which eliminated the 8-hour restriction on prolonged standing, and stated that Demarce should be assigned exclusively to sit-down work for an indefinite period of time.

On February 17, 2010, Kinard sent a letter to Demarce informing her that Robinson had approved an accommodation for her. The letter provided:

- You have been approved for "sit down" games only.
- When the "sit down" game has closed, you will have to leave under FMLA or take a regular "stand up" game.
- Your FMLA EOs **will** count against your available FMLA.

(emphasis in original). At the time, Demarce had been approved by Robinson for intermittent FMLA leave until July 2010. After receiving Robinson's accommodation, Demarce did not object to Kinard or any other member of Horseshoe management.

Demarce's 21-plus-3 sit-down table was located in Pit 4 of the casino, which was not open 24/7. As a result, her game regularly closed early for business reasons. In July 2010, Demarce's renewed request for FMLA leave was denied because she had not worked the requisite number of hours to qualify. Consequently, whenever management closed her sit-down table for business reasons, Demarce could avoid accruing attendance points or working at a stand-up game only if she signed the early out list for that day. According to Demarce, she did not want to sign the early out list for fear of being unable

No. 14-60011

to work sufficient hours to qualify for FMLA leave in the future since signing the early out list might result in being dismissed early from work.

After working under the accommodation for some time, Demarce eventually asked her shift supervisors, Donna Melton Barrett and Laura Gragg, if they would move her sit-down table to Pit 1, which was a 24/7 area of the casino, so that her 21-plus-3 table would not be closed early for business reasons. At the time, Pit 1 did not have a sit-down 21-plus-3 table. Barrett and Gragg denied Demarce's request, explaining that Robinson did not "move tables around." In addition, Demarce also discussed the possibility of learning to deal mini baccarat—a game that had a sit-down table where she could work when her 21-plus-3 table became closed. In order to learn the game, Demarce requested that an experienced dealer be allowed to "shadow" her while on the clock rather than be required to undergo formal training. Demarce's supervisors rejected her "shadowing" proposal and told her that she would need to be formally trained during a time that she was not otherwise scheduled to work.

Demarce's attendance problems persisted throughout 2010. For example, on September 18, 2010, she received a documented "coaching" for accruing 4.5 attendance points in a 12-month period. Three months later, on December 11, 2010, Demarce received a final written warning for accruing 8.5 points in a 12-month period. On July 8, 2011, after accruing an additional point for missing work, Demarce was terminated for accruing 10.5 attendance points in a 12-month period, which exceeded the maximum allowed under Robinson's attendance policy. Of this total, 8 points were imposed for missing work, and 2.5 points were related to circumventing the early out list.

On February 22, 2012, Demarce filed suit against Robinson in the United States District Court for the Northern District of Mississippi, alleging that

5

No. 14-60011

Robinson's conduct violated the ADA under two different theories.[1]   First, Demarce alleged that Robinson had terminated her on the basis of her disability, *i.e.,* osteoarthritis, in violation of the ADA.  Second, Demarce alleged that Robinson had violated the ADA by failing to provide her with a reasonable accommodation for her disability.  Following extensive discovery, Robinson moved for summary judgment on all of Demarce's claims, which the district court granted in Robinson's favor.  Demarce appealed.

## II.

Summary judgment may be granted if there is "no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  A "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In analyzing whether summary judgment is proper, we "review[] the facts, and all inferences drawn from those facts, in the light most favorable to the party opposing the motion." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 110 (5th Cir. 2005).  However, a non-movant cannot defeat a motion for summary judgment "by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (internal quotation marks and citations omitted).

## III.

We first consider Demarce's argument that the district court erred in granting summary judgment in favor of Robinson on her ADA disability discrimination claim.

---

[1] Demarce's complaint also asserted claims against Robinson for FMLA interference and FMLA retaliation.  The district court granted summary judgment in favor of Robinson on both claims, and Demarce has not appealed those rulings.

6

No. 14-60011

The ADA prohibits employers from discriminating against a "qualified individual on the basis of disability," which includes the decision to discharge individuals due to their disability. *See* 42 U.S.C. § 12112(a). When, as here, a plaintiff relies exclusively upon circumstantial evidence in order to prove that her employer discriminated against her on the basis of disability, we apply the *McDonnell Douglas* burden-shifting framework. *See E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009). "Under this framework the plaintiff must first make a prima facie showing of discrimination, *viz.* that (a) she is disabled, has a record of having a disability, or is regarded as disabled, (b) she is qualified for her job, (c) she was subjected to an adverse employment action on account of her disability or the perception of her disability, and (d) she was replaced by or treated less favorably than non-disabled employees." *Id.* "Once the plaintiff makes [t]his *prima facie* showing, the burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Once the employer articulates such a reason, the burden then shifts back upon the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination." *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 280 (5th Cir. 2000).

In the instant case, Robinson disputes that Demarce has satisfied the requisite *prima facie* showing because, in its view, she has not put forth sufficient evidence to show either that she was "qualified for the job" or that she was "treated less favorably than non-disabled employees." Alternatively, Robinson contends that, even assuming *arguendo* Demarce has established her *prima facie* case, she has failed to produce sufficient evidence to raise a genuine issue that its proffered reason for terminating her, *viz.* violation of Horseshoe's attendance policy, was a pretext for unlawful discrimination. For the following

7

No. 14-60011

reasons, we agree with Robinson on this latter point and therefore need not address whether Demarce has established her *prima facie* case.

Robinson maintains that it terminated Demarce for violating its attendance policy by accruing more than 10 points in a 12-month period. In assessing whether Demarce has produced sufficient evidence to create a genuine issue as to whether this reason is pretextual, our inquiry is whether "a jury could conclude that [Robinson] did make its employment decision based on [Demarce]'s status as disabled despite [its] proffered explanation." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003).

As she argued before the district court, the thrust of Demarce's argument on appeal regarding pretext is devoted to her contention that Robinson unjustly imposed one of her 10.5 attendance points. Specifically, Demarce objects to an attendance point she incurred on October 22, 2010. On that day, Demarce contends, she was assessed a point "because she wore a heart monitor to work, making her unable to button the top button of her shirt" as required by Robinson's uniform policy. According to Demarce, "[a] jury could decide that assessing [her] a point for leaving early [that day] was simply the method Horseshoe Casino used to be rid of an employee that it did not want because of her disability." We disagree.

Viewing the relevant facts in the light most favorable to Demarce, as we must, the evidence shows that Demarce was instructed by her doctors to wear a heart monitor following a hospital stay and that the monitor prevented Demarce from buttoning the top button of her shirt, which was required of Horseshoe employees. Demarce testified at her deposition that her supervisor instructed her to go to the wardrobe department in order to have the button on her shirt moved so that she could both wear the heart monitor and be in compliance with the uniform policy. Demarce admits, however, that she did not go to the wardrobe department because, in her view, she did not have time

and the trip would have been futile in any event.  Instead, Demarce testified that she chose to go home for the day, thereby accruing an attendance point.

As the district court correctly observed, this incident does nothing to rebut Robinson's legitimate, nondiscriminatory explanation for Demarce's termination.  Although Demarce avers that the point was unjustly imposed, she does not contest that Robinson's uniform policy required her to button the top of her shirt.  Thus, this is not a case where the summary-judgment evidence shows or supports an inference that the employer fabricated an excuse in support of its reasons for terminating the plaintiff.  *See Parker v. La. Dep't of Educ. Special Sch. Dist.*, 323 F. App'x 321,   328-29 (5th Cir. 2009) (denying summary judgment where the evidence supported an inference that the employer fabricated a reason to terminate plaintiff "to create a pretext" for termination).  Moreover, and critically, the evidence shows that Demarce herself likely could have avoided the attendance point altogether by going to the wardrobe department for an alteration as her supervisor advised.  Although Demarce conclusorily alleges that the trip to wardrobe would have been futile, she admits that she voluntarily went home for the day rather than, at the very least, allowing the wardrobe department to attempt to make her shirt compliant with uniform policy.  In sum, contrary to her arguments on appeal, Demarce has failed to produce sufficient evidence to create a genuine issue as to whether Robinson's reasons for terminating her were a pretext for discrimination.  Accordingly, the district court did not err in granting summary judgment in favor of Robinson on Demarce's ADA disability discrimination claim.

## IV.

We next consider whether the district court erred in granting summary judgment in favor of Robinson on Demarce's ADA reasonable accommodation claim.

The ADA's prohibition on disability discrimination "includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.'"  *Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 681 (5th Cir. 1996) (quoting 42 U.S.C. § 12112(b)(5)(A)). Under the ADA, a reasonable accommodation may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities."  42 U.S.C. § 12111(9)(B).  However, as we have explained, "[t]he ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation."  *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011) (internal quotation marks and citation omitted). Thus, "[a] disabled employee has no right to a promotion, to choose what job to which he will be assigned, or to receive the same compensation as he received previously."  *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 316 (5th Cir. 2007). Ultimately, in order to prevail on a failure-to-accommodate claim, a plaintiff must prove: "(1) [she] is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations."  *Feist v. La. Dep't of Justice*, 730 F.3d 450, 452 (5th Cir. 2013).

Based upon our careful review of the record, pertinent case law, and the parties' respective briefs and oral arguments, we agree with the district court that summary judgment in favor of Robinson was proper on Demarce's reasonable accommodation claim.   Viewing the record in the light most

favorable to Demarce, the evidence shows that Robinson initially responded to Demarce's request for an accommodation with the precise accommodation envisioned by Dr. Varner's instructions, *viz.* restricting her from working stand-up games.  As Demarce admitted at her deposition, when Robinson informed her of its proposed accommodation, she did not protest to anyone in management.  Further, when Demarce eventually requested that Robinson revise its accommodation by allowing her to work at the sit-down mini baccarat tables whenever her 21-plus-3 table closed, the undisputed summary-judgment evidence shows that Robinson was willing to pursue this arrangement so long as Demarce completed formal training in order to learn how to deal the game.  *See* 42 U.S.C. § 12111(9)(B) (observing that a "reasonable accommodation" may include "training materials or policies"). Rather than undertaking this requisite training, however, Demarce insisted that she be permitted to become qualified to work mini baccarat by having a dealer "shadow" her.  Robinson refused Demarce's request, citing its policy of not permitting training by "shadowing."  In light of these undisputed facts, we agree with the district court that a reasonable accommodation was available to Demarce but that she failed to take advantage of that opportunity.  Thus, the district court did not err in granting summary judgment in favor of Robinson on Demarce's failure-to-accommodate claim.  *See Griffin*, 661 F.3d at 224 (granting summary judgment for employer where "no reasonable juror could conclude that [employer] was unwilling to, in good faith, participate in an interactive process to reasonably accommodate [plaintiff]'s needs").

## V.

For these reasons, the district court's grant of summary judgment in favor of Robinson is AFFIRMED.