**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 22-1475

———————

CHERIE LEHENKY,
                                    Appellant

v.

TOSHIBA AMERICA ENERGY SYSTEMS CORPORATION

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-20-cv-04573)
District Judge: Honorable C. Darnell Jones, II

———————

Submitted Under Third Circuit L.A.R. 34.1(a):
January 18, 2023

Before: AMBRO,* PORTER, and FREEMAN,
*Circuit Judges*

(Filed: May 19, 2023)

OPINION**

———————

* Judge Ambro assumed senior status on February 6, 2023.

** This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**PORTER**, *Circuit Judge*.

The Controlled Substances Act identifies tetrahydrocannabinol as a controlled substance. The Agriculture Improvement Act of 2018 added an exception for THC derived from hemp. That change has downstream effects on employment policies that rely on federal law to define the scope of prohibited conduct. Cherie Lehenky alleges she uses cannabidiol (CBD) oil derived from hemp to treat a disability. Toshiba terminated her employment after she tested positive for THC, believing she violated its drug policy. The District Court dismissed Lehenky's claims for disability discrimination and disparate impact. Because her allegations defeat her claims, we will affirm.

I[1]

Toshiba America Energy Systems has implemented a Drug Free Workplace policy. Under the policy, "No employee may use, possess, . . . or be under the influences of, or have the presence in one's system a detectable amount of any illegal drugs or alcohol while on duty, . . . or while otherwise performing work as part of the Company's business, either on or off Company premises." App. 39. The drug policy alerts employees that Toshiba will conduct random drug testing. The policy also states that a "positive test, in itself, shall constitute a violation." App. 39. Testing positive results in immediate termination.

---

[1] Lehenky's claims were dismissed on a Rule 12 motion, so we take as true the facts alleged in her complaint. Where the allegations misquote attachments to the complaint, we rely directly on the attachments without going outside the pleadings. *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 111–12 (3d Cir. 2018).

The policy is not restricted to illegal drugs. "Prescribed drugs and over-the-counter drugs that are improperly used or possessed by an employee are restricted to the same extent as illegal drugs." App. 39. Employees using prescribed or over-the-counter drugs "in the workplace must be able to provide the appropriate documentation which identifies the drug [and] dosage." App. 39. Finally, "[f]ailure to report the use of such drugs to HR may result in disciplinary action, up to and including termination." App. 40.

Cherie Lehenky worked for Toshiba for eighteen years. Since 2014, she worked from home. "After a long period of physical discomfort and pain," Lehenky was diagnosed with an inflammatory autoimmune disease in 2018. App. 25. Due to tissue damage and the accumulation of fluid in her legs, Lehenky required a cane to walk. Lehenky sought relief from this condition. After topical remedies failed to provide relief, she decided to seek her doctor's advice about the use of cannabidiol oils.

According to Lehenky, CBD oils come "from either hemp or the non-germinating parts of a marijuana (cannabis) plant" and may contain low levels of non-psychoactive tetrahydrocannabinol (THC). App. 26. She alleges upon information and belief that the supplement she used was derived from hemp. Lehenky claims that the CBD oil controlled her symptoms, improving "her ability to engage in activities across life domains." App. 26.

Toshiba notified Lehenky on February 5, 2019, that she had been selected for a random drug screening. On test day, Lehenky informed an employee from human resources that she was taking an over-the-counter supplement that could produce a positive result for THC. Lehenky did not inform that employee of her medical condition,

3

but she asked what documentation she needed to provide in expectation of the positive result. The drug test produced a positive result for THC, "and on that sole basis [Toshiba] immediately terminated Plaintiff's employment." App. 29.

Lehenky filed a complaint of discrimination with the Pennsylvania Human Relations Commission and the EEOC. She exhausted her administrative remedies and later filed suit. The District Court granted Toshiba's motion to dismiss her five-count complaint. She appeals the dismissal as to four counts. The first pair raises claims for disparate treatment under the Americans with Disabilities Act and the Pennsylvania Human Rights Act. The second pair claims violations based on the disparate impact of Toshiba's drug policy under the same acts.

## II

The District Court had subject matter jurisdiction over the federal-law claims under 28 U.S.C. § 1331 and over the state-law claims under 28 U.S.C. § 1367. This Court has subject matter jurisdiction over this appeal of a final order under 28 U.S.C. § 1291. We exercise plenary review over appeals from the grant of a motion to dismiss. *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014).

## III

The Americans with Disabilities Act prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to . . . discharge of employees." 42 U.S.C. § 12112(a); *see id*. § 12111(2). Because Pennsylvania courts "generally interpret the PHRA in accord with its federal counterparts," *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d. Cir. 1996) (collecting cases), our ADA analysis "applies

4

equally" to her PHRA claims. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999). Lehenky raises claims alleging disparate treatment and that Toshiba's policy has a disparate impact on people with disabilities. We evaluate those claims separately.

A

To prevail on a disability discrimination claim, Lehenky must allege three elements: she was disabled; she was qualified for the job; and she suffered discrimination because of her disability. *Gibbs v. City of Pittsburgh*, 989 F.3d 226, 229 (3d Cir. 2021). For the third element, Lehenky must plausibly allege that she was terminated "as a result of discrimination" to survive a motion to dismiss. *Taylor*, 184 F.3d at 306 (quotation marks omitted). "Liability in a disparate-treatment case depends on whether the protected trait . . . actually motivated the employer's decision." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) (quotation marks omitted). "And, if no part of the [adverse employment] decision turned on [Lehenky's] status as disabled, [she] cannot, *ipso facto*, have been subject to disparate treatment." *Id.* at 54 n.7. Lehenky alleges that "the drug screen came back positive for THC, and *on that sole basis* Ms. Frank immediately terminated Plaintiff's employment." App. 29 (emphasis added). She adheres to that allegation when she repeats, "The complaint says that the only reason for Lehenky's termination was a positive laboratory test result for THC." Appellant's Br. 7. Later she argues, "Toshiba fired her because CBD oil derived from hemp caused a positive test for THC." Appellant's Br. 20. Lehenky has committed to her theory that her positive drug test was the only cause of her termination.

Lehenky's own pleadings and argument preclude a disparate treatment claim. To plausibly allege discrimination, Lehenky must provide fair notice of her claim with allegations that raise the reasonable expectation that, after discovery, she will prove discriminatory intent. *Gibbs*, 989 F.3d at 230. She did not allege that Toshiba knew of her disability. According to the complaint, she tested positive for THC, and Toshiba believed that the only explanation was illegal drug use. Lehenky alleges Toshiba was wrong. But being wrong does not mean that Toshiba discriminated on the basis of a disability. *See Raytheon Co.*, 540 U.S. at 55 ("If petitioner did indeed apply a neutral, generally applicable no-rehire policy in rejecting respondent's application, petitioner's decision not to rehire respondent can, in no way, be said to have been motivated by respondent's disability."). Indeed, discovery confirming Lehenky's allegation that the positive drug test is the "sole basis" for Toshiba's decision would refute her discrimination claim.

We cannot conclude that Toshiba terminated Lehenky's employment because of a disability of which it was unaware and did not consider when it terminated her employment. Instead, we credit the allegation in the complaint that Toshiba fired Lehenky because it thought she was using illegal drugs. The District Court correctly dismissed the disparate treatment claims.

B

Lehenky also asserts claims for disparate impact. *See* 42 U.S.C. § 12112(b). A disparate-impact claim does not require "evidence of the employer's subjective intent to discriminate." *Raytheon*, 540 U.S. at 52–53. Facially neutral employment practices have a disparate impact when they "in fact fall more harshly on one group than another and

6

cannot be justified by business necessity." *Id.* at 52. Because these claims do not require discriminatory intent, they are not foreclosed by Lehenky's allegations that Toshiba terminated her only because of her positive drug test.

Lehenky founds her disparate-impact claims on two provisions: § 12112(b)(3)[2] and § 12112(b)(6).[3] App. 31–32. The two provisions apply to different types of conduct.[4] Lehenky equivocates on which provision controls her claim, but both fail for a common reason: she has not adequately pleaded that the policy has a disparate impact on people with a disability. The policy prohibits the use of illegal drugs and imposes requirements on employees using legal drugs:

> Prescribed drugs and over-the-counter drugs that are improperly used or possessed by an employee are restricted to the same extent as illegal drugs. Employees in possession of or taking such drugs in the workplace must be able to provide the appropriate documentation which identifies the drug, dosage, and, in the case of prescription drugs, the prescription, its date, and authorizing physician. If unable to provide this information, it will be considered an illegal drug. . . . Failure to report the use of such drugs to HR may result in disciplinary action, up to and including termination.

App. 39–40. In short, Toshiba presumes drug use is illegal, and employees may prove otherwise with appropriate documentation.

---

[2] Section 12112(b)(3) prohibits "utilizing standards, criteria, or methods of administration . . . that have the effect of discrimination on the basis of disability."

[3] Section 12112(b)(6) prohibits, absent business necessity, "employment tests . . . that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities."

[4] Lehenky also cites the failure-to-accommodate provision in her brief. That claim was not pleaded and need not be considered.

Lehenky did not report her use of CBD oil. Even if her CBD oil is not a controlled substance, it caused her to produce a confirmed positive test result for a controlled substance. *See* App. 45 (" 'Under the influence of drugs' means a confirmed positive test result for illegal drug use per this policy."). As provided in the policy, Toshiba could have considered her a user of an illegal drug and terminated her. By the terms of the policy, an employee without a disability wishing to use CBD oil must produce the same documentation as one with a disability. Lehenky has not alleged any facts suggesting that employees without disabilities are more capable of producing the necessary documentation, so the policy's effect does not fall more harshly on a protected class. *Raytheon*, 540 U.S. at 52.

For these reasons, Lehenky has failed to allege that the policy has a disparate impact on people with disabilities.

## C

Plaintiffs are allowed to amend their complaint under certain conditions. Once a plaintiff has missed the deadline to amend a complaint as a matter of course, it may amend "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Toshiba opposes Lehenky's proposed amendments as futile and Lehenky did not request leave from the District Court to amend her complaint, so she is not entitled to amend her complaint. Still, her proposed amendments would not compel reversal, so it is unnecessary to remand for amended pleadings.

8

IV

For these reasons, the District Court correctly dismissed Lehenky's claims. We will affirm.